# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3420

_____

Brian Martin, Individually     *
and as the Administrator     *
of the Estate of Norma     *
Martin, deceased,     *
    *
      Appellant,     *
    *    Appeal from the United States
    v.     *    District Court for the Eastern
    *    District of Arkansas.
Arkansas Blue Cross and     *
Blue Shield, a Mutual     *
Insurance Company,     *
    *
      Appellee.     *

_____

Submitted: January 15, 2002

Filed: August 16, 2002

_____

Before WOLLMAN,[1] Chief Judge, McMILLIAN, BOWMAN, BEAM, LOKEN, HANSEN,[2] MORRIS SHEPPARD ARNOLD, MURPHY, BYE, and RILEY, Circuit Judges.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

_____

BEAM, Circuit Judge.

Brian Martin appeals the district court's denial of attorney fees in this case under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. We affirm.

## I.    BACKGROUND

Norma Martin asked Arkansas Blue Cross and Blue Shield (the Plan) to certify benefits for a lung transplant pursuant to an ERISA employee welfare benefit plan in which she participated. After the Plan denied benefits, Martin sued, alleging that benefits had been wrongfully denied.

The district court held that a procedural irregularity rendered the Plan's denial unreasonable and ordered the Plan to certify coverage for the lung transplant. Martin then petitioned for attorney fees, and asked for a contingent fee based on the cost of the lung transplant surgery (one-third of $125,000, or $41,666.67). The district court denied the petition for fees. The district court applied the five-factor test set forth in Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984), and determined that the factors weighed in favor of the Plan. The district court acknowledged the Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1356 (8th Cir. 1980), presumption in favor of awarding fees absent special circumstances, and concluded that "consideration of the Lawrence factors leads the Court to believe that plaintiffs are not entitled to shift their attorneys' fee onto the shoulders of defendant in this matter."

The district court also denied the fee petition on the alternative ground that Martin had not offered evidence concerning the number of hours reasonably spent on the litigation, or the reasonable hourly rate for such services, holding that a contingent fee award was inappropriate in an ERISA case. Martin filed a motion for

reconsideration, setting forth an hourly fee request in the amount of $11,091.  Martin brought this appeal after the district court denied the motion for reconsideration.[3]

## II.    DISCUSSION

ERISA's fee-shifting provision unambiguously gives the district court discretion to award attorney fees to "either party."  29 U.S.C. § 1132(g).  In making this determination, a district court abuses its discretion when there is a lack of factual support for its decision, or when it fails to follow applicable law.  Richards v. Aramark Servs., Inc., 108 F.3d 925, 927 (8th Cir. 1997).

This case involves the conundrum of what, exactly, is the applicable law for ERISA attorney fee applications in this circuit.  On one hand, our circuit was one of the first to apply the presumption in favor of prevailing ERISA plaintiffs.  In Landro, we held that the prevailing plaintiff was entitled to a presumption in favor of a fee award–limited by the losing defendant's ability to show special circumstances in support of denying an award.  625 F.2d at 1356.  We noted that the losing defendant had the burden of proving those special circumstances.  Id. at 1356 n.19.  Then, in Westerhaus, 749 F.2d at 496, we identified a five-factor test[4] designed to aid the

---

[3]At oral argument, Martin's counsel clarified that he no longer seeks a contingency fee, but simply appeals the denial of the fee requested on reconsideration.

[4]Those factors are: (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Westerhaus, 749 F.2d at 496.  The Westerhaus court quoted these factors from the Fifth Circuit's opinion in Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).

district court in making its discretionary determination regarding fees, but failed to mention the presumption.  See also Jacobs v. Pickands Mather & Co., 933 F.2d 652, 659 (8th Cir. 1991) (stating that court should consider the enumerated Westerhaus factors in exercising its discretion concerning whether to award attorney fees).

Lutheran Medical Center v. Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, 25 F.3d 616, 623-24 (8th Cir. 1994) appears to be the first case in which we referred to the five-factor test and the presumption in the same analysis.  In Lutheran Medical we affirmed the district court's decision to award fees to the plaintiff, and noted that "the Plan has not shown any special circumstances. Moreover, the district court exhaustively considered all five factors set forth in Jacobs." Id. at 624.  Also, in affirming the district court's award of attorney fees in Stanton v. Larry Fowler Trucking, Inc., 52 F.3d 723, 730 (8th Cir. 1995), we noted that the defendant bore the burden of showing special circumstances to preclude an attorney fees award, and credited the district court's consideration of the five-factor test in its decision to award fees to the plaintiff.  Id. at 729-30.  See also Milone v. Exclusive Healthcare, Inc., 244 F.3d 615, 620 (8th Cir. 2001) (referring to both the presumption and five-factor test).

A review of our sister circuits indicates that the First, Third, Fourth, Fifth, Sixth, Eleventh,[5] and D.C. circuits have all considered the presumption and expressly rejected its application.  E.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 226 (1st Cir. 1996); Eddy v. Colonial Life Ins. Co. of Am., 59 F.3d 201, 205-06 (D.C. Cir. 1995); Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th

---

[5]While the Eleventh Circuit has not considered and rejected the presumption, the Fifth Circuit case that did, Bowen, 624 F.2d 1255, was decided in 1980 before the Eleventh Circuit was created by splitting apart the Fifth Circuit, and thus is considered binding precedent on the Eleventh Circuit.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Cir. 1993); Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1274 (3d Cir. 1992); Armistead v. Vernitron Corp., 944 F.2d 1287, 1302 (6th Cir. 1991); Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980).

The Second and Tenth circuits do not use the presumption, but have not considered and expressly rejected it. E.g., Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987); Gordon v. United States Steel Corp., 724 F.2d 106, 109 (10th Cir. 1983).[6] In fact, the Tenth Circuit is the genesis of the five-factor test, as first enunciated in Eaves v. Penn, 587 F.2d 453, 465 (10th Cir. 1978).

Finally, the Seventh and Ninth Circuits appear to utilize some version of both the five-factor test and a presumption in conducting the discretionary attorney fee analysis. See McElwaine v. US West, Inc., 176 F.3d 1167, 1172 (9th Cir. 1999) (spelling out the five-factor test and stating that court should also apply the special circumstances rule); Little v. Cox's Supermarkets, 71 F.3d 637, 644 (7th Cir. 1995) (noting that courts can use either the five-factor test or a "modest presumption" and that under either formulation, "the 'bottom-line question' is the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent").

In the cases that expressly rejected the presumption, the proponent of the presumption generally analogized the ERISA fee-shifting structure to the similar fee-shifting statute in civil rights cases, citing particularly to Hensley v. Eckerhart, 461 U.S. 424 (1983). Hensley clarified the standards for attorney fees in civil rights

---

[6]An unpublished per curiam opinion from the Tenth Circuit does cite Landro and refers to the presumption. See Jenkins v. Green Bay Packaging, Inc., No. 93-5038, 1994 WL 609387, at *2 (10th Cir. Nov. 7, 1994). However, because it is unpublished, that case is not considered precedent in the Tenth Circuit, see Tenth Cir. R. 36.3(A), and no other Tenth Circuit case mentions the presumption.

cases, and the Court noted that prevailing plaintiffs may ordinarily recover attorney fees unless special circumstances make an award unjust. Id. at 429 (citing Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (per curiam)). The cases rejecting the Newman and Hensley approach in ERISA cases reason that despite similar language in the civil rights fee-shifting statutes and ERISA's fee-shifting provision,[7] the overall aims of the civil rights statutes are quite different from ERISA's purpose. E.g., Eddy, 59 F.3d at 204-05. ERISA protects statutorily-created economic interests, while the civil rights statutes protect constitutionally-based dignitary and individual economic interests, which are uniquely important to our nation as a whole. Id. The Eddy court also reasoned that it would belittle the stature accorded civil rights cases to apply the fee-shifting presumption in other types of cases. Id. at 205. And, while the legislative history of the civil rights statutes indicated a presumption is warranted in those case, ERISA lacks similar legislative history. Id.

We agree with the reasoning in Eddy and find that ERISA does not closely correspond with the fee-shifting scheme in the civil rights statutes. Instead, ERISA's language is neutral in its reference to fees, similar to the statute construed by the Supreme Court in Fogerty v. Fantasy, Inc., 510 U.S. 517, 533 (1994). In Fogerty, the Court considered whether the Copyright Act's fee-shifting provision, 17 U.S.C. § 505, was analogous to the civil rights fee-shifting statutes. 510 U.S. at 522. The plaintiff in Fogerty asserted there should be a dual standard (treating prevailing plaintiffs more favorably) for Copyright Act fee determinations as established in Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978), for Title VII cases. The Court rejected this analogy, despite similar language in the statutes. 510 U.S. at 523-25. The Court credited the "important policy objectives of the Civil Rights statutes," and

---

[7]Though the statutes are similar, there is a fundamental difference between the civil rights fee-shifting statute, which provides for attorney fees to the "prevailing party," 42 U.S.C. §§ 1988(b) & 2000e-5(k), and the ERISA statute, which allows the district court to award fees to "either party," 29 U.S.C. § 1132(g)(1).

noted that these objectives were absent in a case involving the Copyright Act. Id. at 523.

Like the Copyright Act as construed in Fogerty, ERISA involves vindication of statutory, economic rights. Also like the Copyright Act, and as admitted by counsel at argument, there is a dearth of legislative history on ERISA, and certainly none which suggests that it was enacted to further important societal goals or ""'polic[ies] that Congress considered of the highest priority."'" Id. (quoting Christiansburg, 434 U.S. at 418, quoting Piggie Park, 390 U.S. at 402.). Instead, both the Copyright Act and ERISA have neutral, discretionary attorney fee language, and equally neutral (or sparse) legislative history concerning attorney fees.

Finally, the "American Rule" that each party normally bears the cost of the litigation unless Congress provides otherwise, Fogerty, 510 U.S. at 533, pervades our analysis. While Congress did provide for fee shifting at the district court's discretion in ERISA cases, the operation of a presumption in favor of fees undermines the "American Rule" and should be employed only in extraordinary cases, such as civil rights litigation. In Fogerty, the Court noted that Congress "legislates against the strong background of the American Rule" and pointed out that the fee-shifting statute's use of the word "'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion." Id. The Court rejected the argument that Congress's modification of the American Rule by providing for fees in the Copyright Act meant that it intended to adopt the "British Rule" that the prevailing party be awarded attorney fees as a matter of course, absent exceptional circumstances. The Court stated, "[s]uch a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment." Id. at 534.

For all of these reasons, we agree with the overwhelming majority of circuits that have considered this issue and concluded that the presumption should not be

employed in ERISA cases. Although our circuit was the first to apply the presumption in ERISA fee-shifting cases, we now find that use of several non-exclusive factors best facilitates the exercise of the district court's discretion in ERISA cases. We overrule <u>Landro</u>'s holding to the contrary. However, we caution that the "five factors" set forth by <u>Westerhaus</u> are by no means exclusive or to be mechanically applied. The <u>Eddy</u> court noted that a mechanical application of the factors may serve to undermine "both the substantive purpose of ERISA and the discretion vested in the courts to carry out that purpose." 59 F.3d at 207. Instead, the district courts should use the factors and other relevant considerations as general guidelines for determining when a fee is appropriate.

For instance, when considering "ability to pay," the district court should keep in mind fundamental differences in plan funding mechanisms. Ordering large fee payments from an employee-funded plan might actually hurt the plan participants by increasing costs, contrary to the statutory purpose of ERISA. Martin advances the argument that the district court should consider the "results obtained" when determining whether to award fees, and, in that analysis, consider the *kind* of results obtained. According to Martin, if the benefits awarded are non-monetary in nature–as here where the benefit awarded was a *lung*–the district court should deem this especially important because the participant is not receiving a pool of money from which fees can be paid. While it is true that the district court may consider this information, because it may consider any and all facts it deems relevant, to the extent that this particular factor is truly a "result obtained," it is more prudently considered when determining the *amount* of the judgment, once the district court has already decided a fee should be awarded. <u>Cf.</u> <u>Hensley</u>, 461 U.S. at 429 & 430 n.3 (once it decides a fee should be awarded, the district court may take into consideration all of the usual factors a court considers when determining the amount of a fee, including the "results obtained" and the "novelty and difficulty of the questions"). <u>See also</u> <u>Fogerty</u>, 510 U.S. at 534 n.19 (expressly condoning the use of "several nonexclusive factors that courts should consider in making awards of attorney's fees to any

-8-

prevailing party. . . . so long as such factors are faithful to the purposes" of the act in question).

The bottom line is, district courts are not obligated to regurgitate, rote, the Westerhaus factors. They are well-recognized *general guidelines* which provide direction to the district court, while also facilitating "meaningful appellate review." Eddy, 59 F.3d at 206. As the Eddy court noted, "[w]hile a particular application of the . . . factors may be subject to criticism, the factors are reasonable and have been widely accepted by the courts." Id. Indeed, Martin admitted at oral argument that few, if any, fee awards have been denied a prevailing plaintiff in ERISA cases nationwide. This is true even though nine of the circuit courts of appeals do not employ any kind of presumption in favor of fees. Thus, the absence of a presumption has obviously not doomed ERISA plaintiffs' attorney fee requests, and will not do so in this circuit either.

The district court used the factors *and* considered the presumption, but it is clear that the court's analysis of factors in deciding not to award a fee to Martin comports with our holding today. The court cited Landro and its presumption but then analyzed the Plan's actions according to the following factors: the Plan fully cooperated by expediting the exhaustion of plan administrative remedies, by presenting a stipulated record to the district court, by agreeing to a simultaneous briefing schedule, and finally, by not appealing the district court's adverse ruling. Instead, the Plan immediately complied with the district court's mandate and certified coverage–resulting in Norma Martin's lung being transplanted within six months after her case was first filed. The district court also noted that Martin would not have prevailed but for a procedural irregularity in the Plan's decision-making process.

The district court was faithful to the substantive purpose of ERISA in analyzing the case as it did. While ERISA's purpose is remedial, it was enacted to protect, among other things, "the interests of participants in employee benefit plans and their

beneficiaries." 29 U.S.C. § 1001(b). In this instance, the Plan did nothing to hinder the interests of a participant in an employee benefit plan. It denied, as experimental, benefits for a lung transplant. A good faith denial of benefits due to a fair disagreement over the extent to which a prospective procedure is covered by a plan does not necessarily endanger participants in the plan. While it may thwart the particular participant who wishes to receive the procedure, the good faith denial may well better serve the remaining plan participants by keeping costs at a reasonable level. If the factors are to have any force and effect, a plan cannot presumptively be charged with attorney fees every time it is reversed in its decision to deny benefits. Cf. Fogerty, 510 U.S. at 533 ("The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion."). On the other hand, encouraging a plan to act expeditiously and appropriately once benefits have been ordered will ultimately best promote the "interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). A plan that understands it may avoid attorney fees if it acts appropriately and quickly is more likely to do so.

## III.  CONCLUSION

Finding no abuse of discretion by the district court, the judgment is affirmed.

BYE, Circuit Judge, with whom McMillian, Circuit Judge, joins, concurring in part and dissenting in part.

I agree with the majority's decision to abandon the use of the presumption when considering ERISA attorney fee applications under 29 U.S.C. § 1132(g). I disagree with two other aspects of the majority opinion.

First, the majority re-affirms a district court's use of the five-factor test when deciding whether to award fees to a successful ERISA plaintiff. Ante at 8-9. The five-factor test has been criticized as "an unhelpful method for determining the

appropriateness of awards to prevailing plaintiffs in ERISA actions." Mark Berlind, Attorney's Fees under ERISA: When is an Award Appropriate?, 71 Cornell L. Rev. 1037, 1058 (1986). Criticisms of the five-factor test include (a) the superfluous nature of the first factor, since courts already have the inherent ability to shift fees because of bad faith, (b) the fact that the second factor does not apply to most ERISA situations because an ERISA plan typically pays the fees of a prevailing party rather than the plan administrators *personally*, and (c) ERISA already provides strict fiduciary standards that accomplish the goals of the third factor, deterrence. See id. at 1058-61; see also Cent. States S.E. & S.W. Areas Pension Fund v. Hitchings Trucking, Inc., 492 F. Supp. 906, 909 (E.D. Mich. 1980) ("[I]t is difficult to determine the relationship of ERISA to each of these factors."). I believe we should develop a better test.

I would abandon the first three factors and replace them with one—"whether a reasonable plaintiff would have brought suit if no award of attorney's fees was possible." 71 Cornell L. Rev. at 1062. In this case, Norma Martin sued to obtain a lung from the Plan, not monetary benefits from which a portion could be used to pay an attorney. In all similar cases where success means the recovery of non-monetary benefits, plaintiffs will have difficulty obtaining legal representation but for the possibility of recovering fees under § 1132(g). If participants who seek non-monetary benefits cannot retain attorneys, ERISA's provisions will not be effectively enforced. Such suits will only be filed, and ERISA's provisions will only be effectively enforced, if success on the merits portends a likely recovery of fees under § 1132(g). In exercising discretion to award fees, a district court should therefore consider whether a suit will result in a monetary recovery from which adequate fees can be paid. If not, fees should probably be awarded under § 1132(g).

Second, in denying fees, the district court noted that Martin would not have prevailed but for a procedural irregularity in the Plan's decision-making process. The majority apparently approves the district court's consideration of that factor in

denying fees, ante at 9, but I am greatly troubled by this factor because it often leads to the imposition of liability in the first place.

In ERISA cases in which the Plan administrator funds the plan, the conflict triggers a less-deferential standard when "(1) a palpable conflict of interest *or a serious procedural irregularity exist[s]*, which (2) cause[s] a serious breach of the plan administrator's fiduciary duty." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (emphasis added). In other words, we heighten our review of a Plan's denial of benefits precisely because of procedural irregularities in its decision-making process, and our heightened standard of review is often outcome-determinative. See Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 589 (8th Cir. 1999) ("Logically, a plaintiff who can show that a conflict of interest or serious procedural irregularity caused a serious breach of the administrator's fiduciary duty will more than likely have substantial evidence showing that the fiduciary's decision was arbitrary and capricious."). The majority's discussion will have the incongruous effect of justifying a denial of fees when that is the very reason a plaintiff prevails. ERISA plans now have less incentive to avoid procedural blunders because they will not be responsible for paying attorney fees when they occur.

\* \* \*

Because the district court improperly considered the existence of a procedural irregularity as a factor that justified its denial of fees, and in my view gave too little consideration to the fact that Norma Martin's successful suit yielded no monetary benefits from which fees could be paid, I would reverse and remand with instructions to award fees at a reasonable hourly rate.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.