**Philip CARRUTHERS, Plaintiff–
Appellant,**

v.

**CARRIER ACCESS CORPORATION and
Turin Networks, Inc., Defendants–
Appellees.**

**No. 09CA2138.**

Colorado Court of Appeals,
Div. III.

Oct. 28, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

Cross & Liechty, P.C., Robert M. Liechty, Greenwood Village, CO, for Plaintiff–Appellant.

Evans & McFarland, LLC, J. Lucas McFarland, Golden, CO; Hartman Employment Law Practice, LLC, Amy Hartman, Boulder, CO, for Defendants–Appellees.

Opinion by Judge J. JONES.

Does section 8–4–110(1), C.R.S.2010, of the Colorado Wage Claim Act, sections 8–4–101 to –123, C.R.S.2010 (the Wage Act), allow a court to award attorney fees to an employer that prevailed on an employee's Wage Act claim only if the employee's claim was frivolous? We hold that it does not: the court may make such an award in its discretion even if the claim was not frivolous. Therefore, we affirm the district court's order directing plaintiff, Philip Carruthers, to pay attorney fees to prevailing defendants, Carrier Access Corporation and Turin Networks, Inc. (collectively, Carrier).[1] However, the district court did not adequately explain how it calculated its award of fees to Carrier, and therefore we remand the case to the district court for additional findings regarding the appropriate amount. Finally, we affirm the district court's awards of certain items of costs Mr. Carruthers challenges on appeal.

### I. Background

Mr. Carruthers sued Carrier, claiming that Carrier violated section 8–4–109 of the Wage Act by failing to pay him commissions totaling approximately $210,000 owed under a written agreement when Carrier terminated his employment. He also asserted claims for breach of contract and unjust enrichment. At trial, the court directed a verdict in Carrier's favor on Mr. Carruthers' claim under the Wage Act. The jury found in Carrier's favor on Mr. Carruthers' other claims.

Carrier moved for an award of attorney fees under section 8–4–110(1) and section 13–17–101, C.R.S.2010, requesting an award of all the fees it had incurred in the case, totaling $140,442.55. Carrier argued, in part, that all of Mr. Carruthers' claims were es-

---

1. Turin purchased Carrier Access Corp. after Carrier Access Corp. terminated Mr. Carruthers' employment.

sentially based on section 8–4–109, C.R.S. 2010. Carrier filed a separate bill of costs pursuant to section 13–16–122, C.R.S.2010, seeking a total award of $6,595.72.

Following a hearing, the court found that an award of fees under section 8–4–110(1) was appropriate. Noting that Mr. Carruthers' Wage Act claim was "partially intertwined" with his other claims, the court concluded "in its discretion that an award of 67.5% of Defendants' total attorney fees is fair and will serve the interests of justice . . . ." The court did not explain further its reasons for concluding that $94,798.72 (67.5% of $140,442.55) was a reasonable amount. It denied Carrier's requests for certain "witness travel and sustenance expenses" as costs, but otherwise allowed the costs Carrier requested.

Subsequently, the court reduced the attorney fee award under section 8–4–110(1) to $34,000.[2] The court's order provided in full as follows:

The court has carefully reviewed its Findings and Order of the September 2, 2009 hearing. Findings were made on the issues of costs and attorney's fees pursuant to the Colorado Wage Claim Act. [B]ased on the findings made at that time the court has reconsidered the attorney's fee award.

Having reconsidered the earlier award and in the exercise of the court's discretion the award of fees i[s] reduced to $34,000. The award for costs remains the same.

Mr. Carruthers does not appeal the court's directed verdict against him on his Wage Act claim. Nor does he appeal the jury's verdicts against him on his other claims. He challenges only the court's award of attorney fees under section 8–4–110(1) and the court's awards of certain items as costs.

## II. Interpretation of Section 8–4–110(1)

The Wage Act allows an employee who has been terminated from employment to sue his former employer for earned wages and other compensation the employer has refused to pay. § 8–4–109. An employee's right to

recover under the Wage Act is conditioned on his compliance with certain procedural steps, but if the employee complies with those steps and the employer refuses to pay, the employee may recover penalties in addition to the unpaid compensation. *Id.*

Section 8–4–110(1) allows the court to award costs and attorney fees to the party that prevailed on a Wage Act claim. As amended in 2007, and applicable here, that section provides:

**Disputes—fees.** (1) If, in any action, the employee fails to recover a greater sum than the amount tendered by the employer, *the court may award the employer reasonable costs and attorney fees* incurred in such action when, in any pleading or other court filing, the employee claims wages or compensation that exceed the greater of seven thousand five hundred dollars in wages or compensation or the jurisdictional limit for the small claims court, whether or not the case was filed in small claims court or whether or not the total amount sought in the action was within small claims court jurisdictional limits. If, in any such action in which the employee seeks to recover any amount of wages or compensation, the employee recovers a sum greater than the amount tendered by the employer, *the court may award the employee reasonable costs and attorney fees* incurred in such action. If an employer fails or refuses to make a tender within fourteen days after the demand, then such failure or refusal shall be treated as a tender of no money for any purpose under this article.

(Emphasis added.)

In opposing Carrier's motion for attorney fees under section 8–4–110(1), Mr. Carruthers argued that the statute only allows an award of fees to a prevailing employer if the employee's claim was frivolous, and that his claim was not frivolous. The district court rejected that argument because it awarded fees to Carrier but declined to find that Mr. Carruthers' claim was frivolous. (The court struck the language in the proposed order

---

2. The court acted sua sponte in this regard. Though Mr. Carruthers asked the court to reconsider the award and award no fees because his

Wage Act claim was not frivolous, he did not argue that some reduced amount greater than $0 would be appropriate.

submitted by Carrier indicating that the award would deter "nuisance litigation … by Plaintiff," but did not otherwise change the order before signing it.) Mr. Carruthers contends on appeal that the district court erred in rejecting his argument.

We observe at the outset that section 8–4–110(1) includes the same operative language with respect to awards of attorney fees to both employers and employees—"the court may award the [employer or employee] reasonable costs and attorney fees incurred in such action." Nonetheless, Mr. Carruthers argues that a prevailing employer is entitled to an award of attorney fees only if the court determines that the employee's claim was frivolous, but that a prevailing employee's request for attorney fees need not clear the same hurdle. That is, a prevailing employee is entitled to an award merely by virtue of having prevailed (so long as the employee recovers more than the employer tendered). He suggests no textual basis for this differing treatment. Rather, he argues that this result is consistent with the purposes of the statute and certain legislative history.

Mr. Carruthers' argument presents a question of statutory interpretation. We review such questions de novo. *Foiles v. Whittman,* 233 P.3d 697, 699 (Colo.2010); *see also Madison Capital Co., LLC v. Star Acquisition VIII,* 214 P.3d 557, 560 (Colo.App. 2009) ("We review de novo the legal analysis employed by the trial court in reaching its decision to award attorney fees.").

Our goals in interpreting a statute are to discern and give effect to the General Assembly's intent. *Ceja v. Lemire,* 154 P.3d 1064, 1066 (Colo.2007); *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513 (Colo.App.2006). We first look to the statute's language, giving words and phrases therein their plain and ordinary meanings. *Ceja,* 154 P.3d at 1066; *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1193 (Colo.2004). And we also consider the statute as a whole so that we may give consistent, harmonious, and sensible effect to all of its parts. *Costilla County Conservancy Dist.,* 88 P.3d at 1192; *Premier Farm Credit,* 155 P.3d at 513. If, after doing this, we determine that the statute is unambiguous, we will enforce it as written and not apply other rules of statutory construction. *Ceja,* 154 P.3d at 1066; *Costilla County Conservancy Dist.,* 88 P.3d at 1193; *Bd. of County Comm'rs v. ExxonMobil Oil Corp.,* 192 P.3d 582, 585 (Colo.App.2008), *aff'd,* 222 P.3d 303 (Colo.2009). If, however, we determine that the statute is ambiguous in some material way, we may look to extrinsic evidence of legislative intent, including, for example, prior law, legislative history, the consequences of a particular construction, and the goal of the statutory scheme. *Costilla County Conservancy Dist.,* 88 P.3d at 1193; *see* § 2–4–203, C.R.S.2010.

### A. Plain Language

■ We perceive no material ambiguity in section 8–4–110(1). It plainly says that a court "may" award costs and attorney fees to a prevailing employer or employee, subject to no qualification other than those pertaining to the amount of the employer's tender, the amount of the employee's recovery, and, in cases where the employer prevails, the amount sought by the employee. Though the statute does not define "may," we see nothing in the text of the statute indicating that it should be given a meaning different from that ordinarily attributed to it. *See ExxonMobil Oil Corp.,* 192 P.3d at 586 (where a term is not defined in a statute, it should be given its usual and ordinary meaning); *Premier Farm Credit,* 155 P.3d at 513 (same; also noting that a term must be considered in context). Read in context, the General Assembly's use of the term "may" in section 8–4–110(1) clearly indicates a grant of discretion. *See People v. Triantos,* 55 P.3d 131, 134 (Colo.2002) ("The legislature's use of the term 'may' is indicative of a grant of discretion or choice among alternatives."); *People v. Dist. Court,* 713 P.2d 918, 922 & n. 7 (Colo.1986) (same).[3] And "[t]o say that a court has discretion in resolving an issue

---

**3.** We recognize that "may" can be interpreted as mandatory, depending on the context in which it is used. *See Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1113 (Colo.1990); *Stewart Soft-* *ware Co., LLC v. Kopcho,* —— P.3d ——, —— —— (Colo.App.2010). Mr. Carruthers does not urge such an interpretation here, and nothing in the text would support it.

means that it has the power to choose between two or more courses of action and that it is therefore not bound in all cases to select one over the other." *Bruce W. Higley Defined Benefit Annuity Plan v. Kidder, Peabody & Co., Inc.*, 920 P.2d 884, 891 (Colo. App.1996); *accord, e.g., Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 166 (Colo.1993); *Buckmiller v. Safeway Stores, Inc.*, 727 P.2d 1112, 1115 (Colo.1986).

■ In essence, Mr. Carruthers asks us to engraft a limitation on the district court's discretionary power that is not found in or suggested by the clear statutory text.[4] But we will not interpret a statute to mean that which it does not express. *People ex rel. Marks v. Dist. Court*, 161 Colo. 14, 24, 420 P.2d 236, 241 (1966) (where a statute required the trial court to take particular action, appellate court would not read it to give the trial court discretion to do otherwise); *Burns v. City Council*, 759 P.2d 748, 749 (Colo.App.1988). Nor will we add or substitute language in an otherwise clear statute. *Colo. Dep't of Revenue v. Hibbs*, 122 P.3d 999, 1004 (Colo.2005) (court would not interpret term "verified" in statute in the narrower sense of "notarized"); *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005) ("We will not create an addition to a statute that the plain language does not suggest or demand."); *Common Sense Alliance v. Davidson*, 995 P.2d 748, 753 (Colo.2000) (court would not add language to a statute). Simply put, we will not judicially legislate. *See Schlessinger v. Schlessinger*, 796 P.2d 1385, 1389 (Colo.1990); *Dawson v. PERA*, 664 P.2d 702, 707 (Colo.1983) ("When the meaning of a statute is plain and unambiguous, a court cannot substitute its opinion as to how the law should read in place of the law already enacted."); *cf. Humane Society of Broward County, Inc. v. Florida Humane Society*, 951 So.2d 966, 969–71 (Fla.Dist.Ct.App.2007)

(statute which provided that a prevailing party "may" be awarded attorney fees clearly made such awards discretionary, and court would not add the requirement that a plaintiff's claim be frivolous or groundless for a prevailing defendant to be awarded fees; characterizing the plaintiff's argument as an invitation to engage in an extra-judicial act usurping legislative authority).

We also observe that had the General Assembly intended to limit awards of attorney fees to prevailing employers to cases in which the employee's claim was frivolous, its inclusion of a provision permitting awards of fees to prevailing employers in section 8–4–110(1) would have been superfluous. This is because section 13–17–102, C.R.S.2010, has long allowed an award of attorney fees when an opposing party's claim was "substantially frivolous."[5] § 13–17–102(2), (4). Where possible, we will not read a statute so as to render any part of it superfluous. *Spahmer*, 113 P.3d at 162; *Dubois v. Abrahamson*, 214 P.3d 586, 588 (Colo.App.2009).

Likewise, to adopt Mr. Carruthers' proposed interpretation of the statute would render superfluous the provision exempting claims for amounts of $7,500 or less from the attorney fees clause. Again, a claim for an amount of $7,500 or less is subject to an award of fees under section 13–17–102 if it is substantially frivolous. To hold that claims for more than $7,500 are only subject to an award of fees if they are frivolous would render meaningless the statute's differentiation between such claims and those for amounts of $7,500 or less. We presume, however, that the General Assembly intended every part of section 8–4–110(1) to have some meaningful effect. § 2–4–201(1)(b), C.R.S.2010; *Lombard v. Colo. Outdoor Educ. Center, Inc.*, 187 P.3d 565, 571 (Colo.2008).

[3] Therefore, we conclude that the plain language of section 8–4–110(1) allows, but

---

4. Mr. Carruthers' proposed interpretation also flies in the face of the principle that "the meaning attributed to words or phrases found in one part of a statute should be ascribed consistently to the same words or phrases throughout the statute, absent any manifest indication to the contrary." *Huddleston v. Bd. of Equalization*, 31 P.3d 155, 159 (Colo.2001); *accord, e.g., Colo. Common Cause v. Meyer*, 758 P.2d 153, 161 (Colo.1988); *cf. North Marion School Dist. No.*

*15 v. Acstar Ins. Co.*, 206 Or.App. 593, 138 P.3d 876, 880 (2006) (phrase used twice in fee-shifting statute would be given the same meaning in each instance).

5. Section 13–17–102 substantially predates the 2007 amendments to section 8–4–110(1) at issue in this case.

does not require, a court to award costs and attorney fees to a prevailing employer in the exercise of its discretion, even where the employee's Wage Act claim was not frivolous. *Cf. City of Wheat Ridge v. Cerveny,* 913 P.2d 1110, 1113–14 (Colo.1996) (constitutional provision stating that "[s]uccessful plaintiffs are allowed costs and reasonable attorney fees" unambiguously permits, but does not require, a court to make such an award, in the exercise of its discretion).

B. Extrinsic Evidence of Legislative Intent

Relying on *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), Mr. Carruthers contends that the seemingly unambiguous language in the statute must nonetheless be interpreted so as to permit a prevailing employer to recover attorney fees only if the employee's claim was frivolous. In *Christiansburg,* the Court held that under section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), a court may award attorney fees to an employer who prevails on an employee's Title VII discrimination claim only if the claim was frivolous, unreasonable, or without foundation. 434 U.S. at 422, 98 S.Ct. 694. That statute states: "[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e–5(k).

The Court did not say, expressly, that the statute was ambiguous. But it nevertheless considered the legislative history of the statute, prior interpretations of other statutes, and policies served by Title VII and the attorney fees statute itself. It therefore considered extrinsic aids to construction in determining the statute's meaning.

Given our conclusion that section 8–4–110(1) is unambiguous, we are not required to consider extrinsic evidence of the statute's meaning. We do so, however, to demonstrate that the relevant extrinsic evidence here does not support a construction of section 8–4–110(1) like that the Court gave to section 706(k) of Title VII in *Christiansburg.*

We begin by looking at the history of the Wage Act's attorney fees provision. *See* § 2–4–203(1)(d) (if a statute is ambiguous, the court "may consider ... former statutory

provisions, including laws upon the same or similar subjects"); *Costilla County Conservancy Dist.,* 88 P.3d at 1193 (if statutory language is ambiguous, court may look to "prior law"); *City of Ouray v. Olin,* 761 P.2d 784, 788 (Colo.1988) ("In determining legislative intent, it is appropriate for courts to consider the history of a statute, including prior statutes on the same subject."); *see also* 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 48.3, at 556–57 (7th ed. 2007).

The first version of the attorney fees statute was enacted in 1901 as part of a comprehensive scheme allowing employees to enforce their rights to wages in court. It provided:

> Whenever it shall become necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due as provided by this act, then such judgment shall include a reasonable attorney fee, in favor of the successful party, to be taxed as part of the costs in the case.

Ch. 55, sec. 7, 1901 Colo. Sess. Laws 130. This statute apparently remained in effect until 1959, when the General Assembly repealed it along with its related provisions, replacing them with an enforcement scheme available solely to the Industrial Commission. Ch. 167, 1959 Colo. Sess. Laws 537 (codified at §§ 80–8–1 to –13, C.R.S.1963).

But in 1967, the General Assembly reinstated the employee enforcement scheme essentially as it had been before the 1959 repeal. The attorney fee provision read as follows:

> **Employee may recover attorney fee.—** Whenever it shall become necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided in sections 80–8–4 and 80–8–5, the judgment in such action shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs in the action.

Ch. 398, sec. 5, § 80–8–14, 1967 Colo. Sess. Laws 861. The Colorado Supreme Court interpreted former section 80–8–14 to require awards to prevailing employers, as well as to prevailing employees. *Van Steenhouse*

*v. Jacor Broadcasting of Colo., Inc.,* 958 P.2d 464, 468 (Colo.1998); *Hartman v. Freedman,* 197 Colo. 275, 280, 591 P.2d 1318, 1322 (1979).

In 2003, the General Assembly repealed section 80–8–14 (which had since been renumbered as section 80–8–114) and replaced it with the following:

> **Disputes—penalties.** (1) If the employer disputes the amount of wages or compensation claimed by an employee under the provisions of this article, and the employer makes a legal tender of the amount that the employer in good faith believes is due, the employer shall not be liable for any penalty, unless, in a legal action, the employee recovers a greater sum than the amount so tendered; and if, in such action, the employee fails to recover a greater sum than the amount tendered, the employee shall pay the cost of the action and the employer's reasonable attorney fees incurred in such action. If the employee recovered a sum greater than the amount tendered, the employer shall pay the cost of the action and the employee's reasonable attorney fees incurred in such action.

Ch. 286, sec. 1, § 8–4–110(1), 2003 Colo. Sess. Laws 1858. Thus, the statute continued to require awards of attorney fees to both prevailing employers and prevailing employees, subject only to the newly imposed trigger tied to the amounts of an employer's tender and an employee's recovery.

In 2007, the General Assembly amended section 8–4–110(1). That version, quoted above, is currently in effect and, as noted, applies to this case. *See* Ch. 381, sec. 3, 2007 Colo. Sess. Laws 1678. The General Assembly did three things by virtue of the 2007 amendments. First, and most importantly for present purposes, it deleted the language requiring that an award of attorney fees be made to the prevailing party ("shall pay") and replaced it with language allowing, but not requiring such awards ("court may award"). And it did this for both employers and employees, using identical language.

Second, it restricted discretionary awards to prevailing employers to cases in which employees seek more than $7,500 in wages or other compensation, but imposed no such restriction on awards to prevailing employees.

Third, it expressly added liability for costs (whereas before the liability had been for attorney fees only, at least under the Wage Act).

We see nothing in the Wage Act's history of enactments indicating that the General Assembly intended by its most recent amendments to allow an award of attorney fees to a prevailing employer only if the employee's claim was frivolous. Indeed, this history is inconsistent with such an interpretation because: (1) the General Assembly has consistently treated prevailing employers and prevailing employees essentially the same; (2) where the General Assembly has intended to treat prevailing employers and prevailing employees differently, it has expressly so indicated [6]; and (3) the General Assembly intended in 2007 to change from a mandatory to a discretionary award regime for both prevailing employers and prevailing employees.

The legislative history of the 2007 amendments also refutes Mr. Carruthers' position. In reviewing that history, we look to proposed and amended versions of the bill; any legislative declaration of purpose; and statements by sponsors of the measure, other members of the General Assembly, and witnesses testifying for or against it. *See* § 2–4–203(1)(b), (c), (g); *People v. Summers,* 208 P.3d 251, 255 & n. 2 (Colo.2009) (successive drafts of legislation); *Walgreen Co. v. Charnes,* 819 P.2d 1039, 1044 (Colo.1991) (legislative declaration); *Dillard v. Indus. Claim Appeals Office,* 121 P.3d 301, 303–04 (Colo.App.2005) (comments by legislators and others during discussion of the proposed legislation), *aff'd,* 134 P.3d 407 (Colo.2006); *People v. Miller,* 97 P.3d 171, 174 (Colo.App. 2003) (where resort to legislative history is necessary to resolve ambiguity, court may give substantial weight to the sponsor's

---

6. The only such difference pertains to the $7,500 threshold now in place restricting awards to prevailing employers.

statements concerning its purpose; citing *People v. Zapotocky,* 869 P.2d 1234, 1239 (Colo.1994)).

The proposed amendments to section 8–4–110(1) were part of a bill, H.B. 07–1247, which also proposed to amend the penalty provisions of the Wage Act, codified at section 8–4–109. With respect to attorney fees, the bill originally proposed changing section 8–4–110(1) to treat prevailing employers and prevailing employees differently. While maintaining the mandatory award language applying to prevailing employees, the bill proposed striking the same language applying to prevailing employers and replacing it with a new subsection (1.5), which read:

> The court shall apply the provisions of Part 1 of Article 17 of Title 13, C.R.S., if an employee commences an action or pursues an appeal that lacks substantial justification or is substantially frivolous, substantially groundless, or substantially vexatious.

The bill's co-sponsor, Rep. Judd, introduced it to the Colorado House of Representatives Committee on Business Affairs & Labor at a hearing of that committee on February 12, 2007.[7] In his testimony, he noted that because most potential claims by employees under the Wage Act are for relatively small sums of money, the *requirement* that an unsuccessful employee pay the employer's attorney fees may create too much of a disincentive for employees to enforce their rights under the Wage Act. *See* Hearing on H.B. 07–1247 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assemb., 1st Sess. (Feb. 12, 2007). Witnesses representing employer and employee groups or points of view testified for and against the bill. Rep. Judd then indicated that he had more work to do on the bill and was continuing to negotiate with interested stakeholders. He asked that the bill be held over. The committee agreed.

On February 22, 2007, Rep. Judd reintroduced a substantially revised version of the bill to the House Committee. As relevant here, the proposed bill deleted the new subsection (1.5) and replaced it with language substantially similar to that which was ultimately enacted in section 8–4–110(1). The revisions changed "shall" to "may" with respect to the court's authority to award attorney fees, as to prevailing employers and prevailing employees alike. Rep. Judd noted this change in his testimony before the committee. He said awards of attorney fees would not be mandatory, but would be discretionary as to both prevailing employers and prevailing employees; a prevailing employer could be awarded attorney fees for a frivolous claim if the amount sought was no greater than $15,000, but could not receive an award in such cases otherwise; an employee asserting a claim for more than that amount would have to know "going in" that he would have to pay the employer's attorney fees if he lost; and that the new language was all that could be agreed to in negotiations with interested stakeholders. Hearing on H.B. 07–1247 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assemb., 1st Sess. (Feb. 22, 2007). He further explained, however, that *as to awards to prevailing employees,* subsection (2) of the newly added statement of purpose expressed how he expected courts to exercise their discretion. *Id.* That new section, which would not be an operative part of the Wage Act as enacted, provided at this juncture as follows:

> SECTION 1. Legislative declaration. (1) The General Assembly hereby finds, determines, and declares that the wage claim statute should be amended to create greater incentives for employers to promptly pay wages and other compensation owed to current and former employees.
>
> (2) The General Assembly intends the change to a discretionary standard for awards of attorney fees and costs to be interpreted consistently with the courts' interpretation of the attorney fee provi-

---

7. With respect to awards of attorney fees, the minutes of the hearing state that that bill "only requires a non-prevailing employee to pay attorney fees in frivolous claims *or at the discretion of the judge.*" Staff Summary of Hearing on H.B. 07–1247 before the H. Comm. on Business Affairs & Labor, 66th Gen. Assemb., 1st Sess. (Feb. 12, 2007) (emphasis added), *available at* http://www.leg.state.co.us/CLICS/CLICS2007A/commsumm.nsf.

sions in the federal Civil Rights Act of 1964, 42 U.S.C. sec.2000e, and the federal Fair Labor Standards Act, 29 U.S.C. sec. 216. The United States Supreme Court has held that the similar attorney fee provisions in federal civil rights statutes are intended to further the goal of ensuring that private parties enforce those laws, since "few aggrieved parties would be in a position" to seek relief "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 [88 S.Ct. 964, 19 L.Ed.2d 1263] (1968).

(3) In adopting this discretionary standard, the General Assembly intends to make the wage claim act a useful tool for employees to recover wages he or she [sic] is owed by removing the disincentive for employees to reasonably and in good faith make claims under this statute. If an employee is required to pay his or her employer's attorney fees, the cost could be so great as to force the employee into bankruptcy.[ ]

Neither Rep. Judd nor any other witness testified that a prevailing employer could recover attorney fees only if the employee's claim (if for more than $15,000) was frivolous.

After passage by the House, H.B. 07–1247 went to the Senate, where it was originally introduced before the Colorado Senate Committee on Business, Labor, & Technology by co-sponsor Sen. Tupa. In his opening remarks, Sen. Tupa noted that Colorado was one of only three states that made an award of attorney fees in wage cases mandatory. Hearing on H.B. 07–1247 before the S. Comm. on Business, Labor, & Technology, 66th Gen. Assemb., 1st Sess. (Mar. 13, 2007). Representatives of employers and employees testified that they viewed the discretionary authority of courts to award attorney fees as applying equally to both prevailing employers and prevailing employees. *See id.* (testimony of David Lichtenstein and Jeff Weist).

The final version of the bill deleted the reference in part (2) of the legislative declaration (section 1) to the Fair Labor Standards Act and shortened subsection (3) of the legislative declaration to read as follows: "Attorney fees awarded against an employee are not intended to impose an excessive financial hardship." Ch. 381, sec. 1, 2007 Colo. Sess. Laws 1677.

This legislative history reveals an intent that courts treat prevailing employees as presumptively entitled to awards of attorney fees and that they be careful to assure that awards of fees against unsuccessful employees not impose excessive financial hardship. But it does not indicate an intent to limit awards of attorney fees to prevailing employers to cases in which the employees' claims were frivolous. Indeed, it indicates an intent that there be no such requirement. The initial proposal to include such a requirement was abandoned, and such awards were thereafter expressly committed to the courts' discretion.

Mr. Carruthers contends, however, that the reasons for allowing attorney fees to prevailing employers under the Wage Act, as articulated in other cases, support his construction of the statute. We are not persuaded.

In applying a previous version of the attorney fees statute, the supreme court said: "The purpose of the [attorney fee] provision is twofold, to indemnify the employee against the necessity of paying an attorney's fee when he is successful and to protect the employer against nuisance litigation." *Hartman*, 197 Colo. at 280, 591 P.2d at 1322. Divisions of this court have echoed this conclusion. *See Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 691 (Colo.App. 2006) (noting one purpose of the statute is "to protect employers from unwarranted litigation under the Wage Act"); *Voller v. Gertz*, 107 P.3d 1129, 1132 (Colo.App.2004). But these cases so articulated the purposes of the statute in the context of construing former versions of the statute, which, as noted, *required* awards of attorney fees to prevailing employers.[8] Thus, it is illogical for Mr. Carruthers to assert that these purposes indicate a legislative intent to allow an award

---

8. We also observe that none of these decisions includes any substantive analysis of the purposes of the attorney fee provision or cites any statutory authority for its pronouncements.

of attorney fees to a prevailing employer only when the employee's claim was frivolous.

Ultimately, Mr. Carruthers' reliance on *Christiansburg* is misplaced. It is true that the legislative declaration for amended section 8–4–110(1) states that it should be construed as the federal courts have construed the attorney fees provision applicable to Title VII claims. *See* Ch. 381, sec. 1, 2007 Colo. Sess. Laws 1677. But the declaration goes on to clarify that the General Assembly was referring to cases involving only prevailing employees.[9] The case cited in the declaration, *Newman v. Piggie Park Enterprises,* held that a prevailing employee is presumptively entitled to an award of attorney fees, and should be denied such an award only if "special circumstances would render such an award unjust." 390 U.S. at 402, 88 S.Ct. 964.[10] It did not address awards to prevailing employers.

It is also true that the Court in *Christiansburg* addressed statutory language that, on its face, would appear to make an award of attorney fees to a prevailing employer merely discretionary. But the statute there at issue did not have a history of prior enactments or a legislative history comparable to that of section 8–4–110(1).

The Court in *Christiansburg* based its decision on two "equitable considerations." First, the Court observed that a plaintiff in a Title VII action is effectively a "private attorney general"—"the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" *Christiansburg,* 434 U.S. at 418, 98 S.Ct. 694 (quoting in part *Newman,* 390 U.S. at 402, 88 S.Ct. 964). That policy, of course, is the prohibition of discrimination in employment based on certain characteristics. Second, the Court reasoned that it was equitable to treat prevailing employers and prevailing employees differently because "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.*

Neither of these equitable considerations is present with respect to section 8–4–110(1). In suing an employer for unpaid wages, an employee is not acting as an agent of the state. Nor is he seeking to vindicate any policy that the General Assembly has deemed to be of the highest priority. Rather, he is seeking to enforce a fundamentally contractual obligation of the employer to pay earned wages or other compensation. *See* §§ 8–4–101(8)(a) (defining wages and compensation),–109(1), C.R.S.2010; *see also Barnes v. Van Schaack Mortgage,* 787 P.2d 207, 209 (Colo.App.1990) (the Wage Act "applies only to compensation that has been earned under the employment agreement"). While it is, of course, important that employers comply with their contractual obligations to pay former employees earned wages and compensation when due, we cannot say that the policy of the Wage Act to encourage and enforce such compliance is on a par with that underlying the anti-discrimination laws. Put another way, we do not perceive that the purposes of the Wage Act justify treating prevailing employers and prevailing employees fundamentally differently for purposes of awarding attorney fees, at least in the absence of any textual or extra-textual support for such a result.

Though Mr. Carruthers asserts in his opening brief, without citing any authority, that "[a]ll federal cases, in construing permissive fee statutes, have followed [*Christiansburg*'s] lead," that is plainly untrue. Certainly, federal courts have ruled similarly to *Christiansburg* in applying attorney fees provisions in antidiscrimination, civil rights, and other statutes where policies such as those relied on in *Christiansburg* are present. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 429 & n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (applying 42 U.S.C. § 1988); *Hughes v. Rowe,* 449 U.S. 5, 14–15, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (same); *Lane v. Residential Funding Corp.,* 323 F.3d 739, 746–48 (9th Cir.2003) (applying the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–

**9.** This is also borne out by Rep. Judd's comments during hearings on H.B. 07–1247, as noted above.

**10.** *Newman* was actually decided under Title II of the Civil Rights Act of 1964, not 42 U.S.C. § 2000e (Title VII). But in *Christiansburg,* the court applied *Newman*'s holding to Title VII. 434 U.S. at 417, 98 S.Ct. 694.

2617); *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 & n. 5 (5th Cir.2001) (applying the fee-shifting provision of the Americans with Disabilities Act, 42 U.S.C. § 12205; citing cases).

However, where the federal courts have found that particular statutes do not advance policies similar to those implicated in *Christiansburg*, either in kind or in weight, they have declined to read into prevailing party attorney fees provisions a limitation like that imposed by the Court in *Christiansburg*. *See, e.g., Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136–40, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (applying 28 U.S.C. § 1447(c), part of the statute governing removal of cases to federal court); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 521–25, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) (applying the Copyright Act of 1976, 17 U.S.C. § 505); *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 969–73 (8th Cir.2002) (en banc) (applying the fee-shifting provision of ERISA, 29 U.S.C. § 1132(g)); *cf. Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1052–53 (9th Cir.2009) (declining to apply *Christiansburg* to awards of costs under the Rehabilitation Act, 29 U.S.C. § 794a(b)), *cert. denied*, —— U.S. ——, 130 S.Ct. 299, 175 L.Ed.2d 136 (2009). As the Eighth Circuit recognized in *Martin v. Arkansas Blue Cross & Blue Shield*, courts considering this issue generally distinguish between statutes vindicating contractual or statutorily-created economic interests and those that vindicate constitutionally-based dignitary and individual economic interests. 299 F.3d at 970–71.

Many state courts have likewise declined to impose the *Christiansburg* frivolousness standard on prevailing defendants under a variety of fee-shifting statutes. *See, e.g., Molski v. Arciero Wine Group*, 164 Cal. App.4th 786, 79 Cal.Rptr.3d 574, 577–79 (2008) (applying a disability access statute); *Humane Society of Broward County*, 951 So.2d at 968–71 (applying an unfair trade practices statute); *New World Communications of Tampa, Inc. v. Akre*, 866 So.2d 1231, 1235–36 (Fla.Dist.Ct.App.2003) (applying a private sector whistle-blower statute); *Coleman Constr., Inc. v. Kudrna*, 332 Mont. 112,

136 P.3d 970, 971–72 (2006) (applying a landlord-tenant statute). These courts have also looked to whether the policies served by the statutes at issue are comparable to those implicated in *Christiansburg*.

As discussed above, the policies served by the Wage Act, and the fee-shifting provision in particular, are not similar to those implicated in *Christiansburg*. Therefore, *Christiansburg* and its progeny do not support Mr. Carruthers' position.

In sum, we hold that the plain language of section 8–4–110(1) allows a court to award attorney fees to a prevailing employer in the exercise of its discretion: a finding that the employee's claim was frivolous is not required. Alternatively, we hold that extrinsic aids to statutory construction do not support the imposition of such a requirement.

### III. Guidelines for Exercising Discretion Under § 8–4–110(1)

Though Mr. Carruthers argues that the district court erred in awarding fees because his claim was not frivolous, he does not contend that the court otherwise abused its discretion in awarding fees to Carrier. (He does contest the amount awarded.) Section 8–4–110(1) does not identify the factors a district court should apply in deciding whether to award attorney fees to a prevailing employer. Nor has any Colorado appellate court decision identified such factors. Therefore, we take this opportunity to provide guidance to the district courts.

We begin with the principle that a court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous application of the law. *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 840 (Colo.App.2007); *Ehrlich Feedlot, Inc. v. Oldenburg*, 140 P.3d 265, 271 (Colo.App.2006). Merely to say this, however, may provide little concrete guidance to those courts that must make a decision in the first instance. *See Buckmiller*, 727 P.2d at 1115 ("In its abstract sense, judicial discretion implies the absence of any settled legal standard that controls the controversy at hand."). Therefore, in numerous contexts, Colorado appellate courts have identified factors a court should consider in exercising

discretionary authority. *See, e.g., Cornelius v. River Ridge Ranch Landowners Ass'n,* 202 P.3d 564, 570 (Colo.2009); *Ingold v. AIMCO/Bluffs, L.L.C. Apartments,* 159 P.3d 116, 125–26 (Colo.2007); *Thomas v. Rahmani–Azar,* 217 P.3d 945, 948 (Colo.App.2009); *Dubray v. Intertribal Bison Cooperative,* 192 P.3d 604, 608 (Colo.App.2008) (reasonable amount of attorney fees); *RMB Services, Inc. v. Truhlar,* 151 P.3d 673, 676 (Colo.App. 2006); *Kennedy v. King Soopers Inc.,* 148 P.3d 385, 389 (Colo.App.2006) (concerning an award of certain costs); *Associated Business Products v. Indus. Claim Appeals Office,* 126 P.3d 323, 325–26 (Colo.App.2005); *Clark v. Farmers Ins. Exchange,* 117 P.3d 26, 29–30 (Colo.App.2004). In doing so here, we take into account the purposes of the Wage Act generally and the attorney fees statute specifically.

▮ In deciding whether to award fees to a prevailing employer, the court should consider all relevant circumstances. Those circumstances typically will include the following:

(1) the scope and history of the litigation;

(2) the ability of the employee to pay an award of fees;

(3) the relative hardship to the employee of an award of fees;

(4) the ability of the employer to absorb the fees it incurred;

(5) whether an award of fees will deter others from acting in similar circumstances;

(6) the relative merits of the parties' respective positions in the litigation;

(7) whether the employee's claim was frivolous, objectively unreasonable, or groundless;

(8) whether the employee acted in bad faith;

(9) whether the unsuccessful claim was based on a good faith attempt to resolve a significant legal question under the Wage Act; and

(10) the significance of the claim under the Wage Act in relation to the entire litigation.

*See Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980) (identifying factors a court should consider in determining whether to award attorney fees to a prevailing party under ERISA); *Humane Society of Broward County,* 951 So.2d at 971–72 (identifying factors a court should consider in deciding whether to award fees to a party who prevails on a statutory deceptive trade practices claim); *see also Cerveny,* 913 P.2d at 1115 (totality of the circumstances must be considered in exercising discretion to award fees; significance and outcome of litigation, and significance of issues on which the party prevailed in relation to the litigation as a whole are relevant).[11]

## IV. Reasonableness of the Fees Awarded

▮ Mr. Carruthers contends that the amount of fees awarded by the court, $34,000, is unreasonable under the circumstances, and that the district court did not adequately explain the basis of the award. We agree with him that the district court did not make findings sufficient to permit meaningful appellate review. Therefore, we remand for additional findings.

▮ In determining a reasonable amount of attorney fees, the court should first calculate a "lodestar" amount, multiplying the number of hours reasonably expended by a reasonable hourly rate. *Dubray,* 192 P.3d at 608. The court may then adjust the amount based upon a number of factors. *Id.*

We review a district court's determination of a reasonable amount of attorney fees for an abuse of discretion. *Id.; Yaekle v. Andrews,* 169 P.3d 196, 201 (Colo.App.2007), *aff'd,* 195 P.3d 1101 (Colo.2008). The district court "must make sufficient findings to permit meaningful appellate review...." *Yaekle,* 169 P.3d at 201; *accord Kinsey v. Preeson,* 746 P.2d 542, 552 (Colo.1987); *Bilawsky v. Faseehudin,* 916 P.2d 586, 591 (Colo.App. 1995).

**11.** We express no view as to what considerations should guide a court in deciding whether to award fees to a prevailing employee.

The district court did not make sufficient findings here. At the hearing on Carrier's motion for attorney fees, the court stated merely that it would award "67.5 percent of requested fees," totaling $94,798.72. When Mr. Carruthers' attorney asked the court how it had arrived at that amount, the court responded: "I don't know. I—it was at my discretion. I used my discretion." The court's first written order awarding fees did not include any further explanation for the amount. It did not reflect consideration of any of the relevant factors. Nor did the court's second written order reducing the award to $34,000. Therein, the court simply stated that it was reducing the award "in the exercise of the court's discretion. . . ."

Under these circumstances, the award cannot stand. See Yaekle, 169 P.3d at 201 (where court did not identify the basis for awarding fees, and made no factual findings supporting its determination, the award would be vacated and the case remanded for factual findings); Bilawsky, 916 P.2d at 591 (same). Thus, we vacate the award and remand the case for factual findings as to a reasonable amount of Carrier's attorney fees incurred in defending against Mr. Carruthers' Wage Act claim. The court should base its findings solely on the evidence already in the record, though it may conduct a hearing to hear further arguments of counsel.[12]

## V. Costs

■ Mr. Carruthers contends that the district court abused its discretion in awarding costs for: (1) travel expenses of a witness (Mr. Ready) who traveled from outside Colorado to attend and testify at the trial (totaling $1,994.48); and (2) mileage reimbursement for another witness (totaling $274.29).

■ A district court has considerable discretion in awarding costs to a prevailing party. Bainbridge, Inc. v. Douglas County Bd. of Comm'rs, 55 P.3d 271, 274 (Colo.App. 2002). Thus, we will not reverse a district court's award of costs absent a showing of a clear abuse of that discretion. Ballow v. PHICO Ins. Co., 878 P.2d 672, 684 (Colo. 1994).

Carrier requested a total of $3,867.80 pertaining to Mr. Ready's travel, consisting of $735.80 for airfare (and related baggage fees), $1,132 for his stay at a hotel, and $2,000 for a "per diem courtesy." The court reduced that request by $2,000, but otherwise allowed these costs.

The district court did not abuse its discretion in awarding the travel expenses. The court apparently intended to allow the costs for airfare and hotel accommodations, but not the "per diem courtesy." The travel-related expenses awarded by the court are permissible if reasonable, and Mr. Carruthers has not shown that the court abused its discretion in determining that they were reasonable.

There is, however, a mathematical error in the award pertaining to Mr. Ready's travel expenses. Carrier initially sought $3,994.48, an amount based on an error in totaling the costs. The correct amount was $3,867.80, which Carrier noted in its reply in support of its bill of costs. The court did not catch the error. But the court expressly intended to deduct $2,000 from the request pertaining to Mr. Ready. Therefore, the correct total should be $1,867.80, not the $1,994.48 awarded by the court. We remand for correction of this error.

■ We similarly perceive no abuse of discretion in the court's award of $274.29 in witness mileage fees. Those mileage fees pertained to a witness who had been subpoenaed to testify at trial. Such costs are expressly allowed by sections 13–16–122(1)(e) and 13–33–103(1), C.R.S.2010.

## VI. Carrier's Attorney Fees on Appeal

■ We deny Carrier's request for an award of its attorney fees incurred on appeal. Though it prevailed as to part of the appeal, it did not successfully defend the amount of attorney fees awarded by the district court.

## VII. Conclusion

The orders awarding attorney fees and costs are vacated as to the amount of fees and the amount of costs pertaining to Mr.

---

12. We do not intend to imply that Carrier established the reasonableness of any particular amount. That is a question to be resolved in the first instance by the district court.

Ready. The case is remanded for a determination of Carrier's reasonable attorney fees incurred in the district court in defending against the Wage Act claim and a correction of the order to reflect an award of $1,867.80 in costs pertaining to Mr. Ready.[13] The orders are affirmed in all other respects.

Judge DAILEY and Judge LICHTENSTEIN concur.

13. Both parties' principal briefs employ a font that is too small: Mr. Carruthers' Opening Brief in the table of contents and table of authorities, and Carrier's Answer Brief in footnotes. *See* C.A.R. 32(a)(1). We remind counsel of their obligation to comply fully with our rules governing the form and content of briefs.