Gillian P. **HARTMAN**, Plaintiff–Appellee,

v.

**COMMUNITY RESPONSIBILITY CENTER, INC.,** Defendant–Appellant.

No. 02CA2525.

Colorado Court of Appeals, Div. V.

Jan. 15, 2004.

Holland & Hart LLP, Christopher H. Toll, Megan C. Bertron, Denver, Colorado, for Plaintiff–Appellee.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Katherine T. Eubank, Amy Bauer, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PICCONE.

In this Wage Claim Act (Wage Act) case, defendant, Community Responsibility Center, Inc. (CRC), appeals the trial court order awarding attorney fees to plaintiff, Gillian P. Hartman, pursuant to the former § 8–4–114. We affirm and remand for an award of appellate attorney fees.

After resigning from her employment, Hartman requested payment of wages and vacation time. CRC refused to pay. Hartman brought a Wage Act claim against CRC for $16,489.20 in unpaid wages and accrued vacation pay, the statutory penalty of fifty percent, and attorney fees.

CRC asserted various defenses, including misconduct, setoff, lack of consideration, lack of valid contract for the wages, and disloyalty. CRC also asserted counterclaims for conversion, civil theft, and breach of fiduciary duty, seeking $486,306 in damages, primarily based on Hartman's alleged improper payment of excessive salary to herself and others.

After a five-day jury trial, the court entered judgment in Hartman's favor for $16,135.86 in unpaid wages; $8,067.93 in penalties; and $3,202.49 in prejudgment interest, for a total judgment of $27,406.28. The trial court also entered judgment against CRC on its counterclaims. The judgment was affirmed on appeal. *Hartman v. Cmty. Responsibility Ctr., Inc.*, 87 P.3d 202, 2003 WL 22509369 (Colo.App. No. 02CA1308, Nov. 6, 2003).

Thereafter, Hartman requested attorney fees as the winning party under the former § 8–4–114. At the attorney fees hearing, Hartman's expert witness testified that the hourly rates charged by her lawyers were reasonable given the complexity of the case. CRC's expert witness testified the rates charged by Hartman's lawyers were unreasonable for an employment case and that the associate working on the case was inefficient. The trial court awarded Hartman substantially all her attorney fees in the amount of $159,888.08.

I.

CRC contends the trial court erred in awarding Hartman attorney fees incurred in defending its counterclaims. We disagree.

The relevant provision of the Wage Act, § 8–4–114, in effect at the time provided:

Whenever it [is] necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided by sections [8–4–104] and [8–4–105], the judgment in such action shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs of the action.

Colo. Sess. Laws 1967, ch. 398, § 80–8–14 at 861 (repealed Colo. Sess. Laws 2003, ch. 286, § 2 at 1863).

"The purpose of [§ 8–4–114] is twofold, to indemnify the employee against the necessity of paying an attorney's fee when he is successful and to protect the employer against nuisance litigation." *Hartman v. Freedman*, 197 Colo. 275, 280, 591 P.2d 1318, 1322 (1979).

Here, the trial court's order gave effect to the first goal of the Wage Act, indemnification of the employee against the necessity of paying attorney fees when she is successful, without running afoul of the second goal, protection of the employer against nuisance litigation.

We acknowledge the trial court's statement that a "huge portion of the discovery and time spent in this case related to [CRC's] counterclaims ... because [CRC's] counterclaims transformed the nature of the litigation." However, we do not interpret that statement as supporting CRC's claim that the trial court "recognized that the fees for prosecuting the wage claim and for de-

fending the counterclaim were severable." CRC's defenses to the wage claim—disloyalty and lawful setoff—and its counterclaims—disloyalty and breach of fiduciary duty—involved many of the same facts and legal issues.

Hartman claimed approximately $16,000 in wages and unpaid vacation time based on her annual salary of $122,000. CRC asserted that Hartman's claimed salary of $122,000 resulted from her disloyalty and that her correct salary was, at most, only $80,000 annually. Thus, to prevail on her wage claim, Hartman had to defeat CRC's defense of disloyalty and its statutory setoff of lawful charges or indebtedness, both of which were based on counterclaims for breach of fiduciary duty, for allegedly paying herself and others excessive salaries. Had she not rebutted these allegations, her wage claim would have failed, leaving her liable to CRC for its attorney fees under the former § 8–4–114. *See, e.g., Davidson v. Bonteso Gold Corp.*, 851 P.2d 254 (Colo.App.1993). Moreover, the fees for prosecuting the wage claim, rebutting CRC's defenses, and defending against CRC's counterclaims are not separable.

CRC's reliance on *Porter v. Castle Rock Ford Lincoln Mercury, Inc.*, 895 P.2d 1146 (Colo.App.1995), is misplaced. In *Porter*, the employee prevailed on his wage claim, and the employer prevailed on a negligence counterclaim that did not arise from the same factual circumstances as the wage claim. The issue in *Porter* was the applicability of the net judgment rule to determine who was the prevailing party. In concluding the employee was the prevailing party for purposes of an attorney fees award, the court declined the employer's request to apply the net judgment rule. Here, the net judgment rule has no application because Hartman prevailed on all claims, defenses, and counterclaims. Unlike *Porter*, Hartman had to defeat the disloyalty allegations to establish the validity and the amount of her wage claim.

Accordingly, we conclude the court did not err by including in the award attorney fees incurred in defending CRC's counterclaims.

## II.

CRC next contends the trial court's award of attorney fees was unreasonable given the time spent prosecuting the claim, the amount in controversy in relation to the results obtained, and the hourly rates charged by Hartman's attorneys. We disagree.

When a statute mandates an award of attorney fees to the prevailing party through the use of the word "shall," as § 8–4–114 did, this language "leaves nothing to the discretion of the trial court except to determine what is a reasonable fee." *Montemayor v. Jacor Communications, Inc.*, 64 P.3d 916, 925 (Colo.App.2002)(quoting *Keeton v. Rike*, 38 Colo.App. 505, 506, 559 P.2d 262, 263 (1977)). "The determination of the reasonableness of attorney fees is a question of fact for the trial court and will not be disturbed on appeal unless patently erroneous and unsupported by the evidence." *Porter, supra*, 895 P.2d at 1150; *see Fang v. Showa Entetsu Co.*, —— P.3d ——, 2003 WL 22722955 (Colo.App. No. 02CA0836, Nov. 20, 2003). Thus, we review the reasonableness of the amount of attorney fees awarded under an abuse of discretion standard. *See Deighton v. City Council*, 3 P.3d 488 (Colo.App.2000).

In awarding attorney fees, a trial court may consider several factors, including (1) the amount in controversy, (2) the time required to effectively represent the client, (3) the complexity of the case, (4) the value of the legal services to the client, and (5) the customary practice in the legal community regarding fees in similar cases. *Fang, supra; Porter, supra*.

### A.

CRC urges us to find the amount of attorney fees unreasonable because most of these fees were incurred defending its counterclaims. CRC relies on a statement by the trial court that the case could have been tried in "a day, maybe a day and a half" if no counterclaims were at issue. However, we have already concluded that Hartman's fees incurred in successfully prosecuting her wage claim are not separate from those incurred in defending the counterclaims.

## B.

■ CRC contends the trial court erred in finding the rates of Hartman's lawyers reflected the amount customarily charged in the locality for similar services because her attorneys charged commercial litigation rates, not employment litigation rates. We are not persuaded.

The trial court found, "[B]y virtue of the [CRC's] counterclaims, the entire nature of the litigation was transformed, and the case became easily in this Court's view a commercial litigation case. And not just that, but a fairly complex commercial litigation case." The court went on to detail the issues implicated by CRC's counterclaims, including, "issues regarding the volume of documents involving CRC's financial investments ... issues regarding the board minutes ... [and] issues regarding the board's authority."

The trial court concluded that the hourly rates of Hartman's attorneys were reasonable, the main partner's rate being on the low end of the commercial litigation scale and the associate's rate being on the high end of the scale. The court found the associate's rate reasonable because a considerable amount of that attorney's time was written off, which resulted in the equivalent of a lower hourly rate. Because the record supports the trial court's findings, those findings may not be disturbed on appeal. *See Porter, supra.*

## C.

■ CRC contends the trial court erred because the attorney fees awarded are almost ten times the amount in controversy. CRC argues the trial court failed to consider the amount in controversy and the results obtained, which are among eight factors set forth in *Mau v. E.P.H. Corp.,* 638 P.2d 777, 779 (Colo.1981), to be considered when determining the reasonableness of attorney fees. We disagree.

Here, contrary to CRC's assertion, the court referenced the amount in controversy, noting that Hartman won a judgment for just over $24,000 on her Wage Act claim. The court took into account the results obtained, mentioning that Hartman "won every dollar that she requested in her $16,000 claim" and "prevailed completely on the counterclaims." The court further noted that it "ruled almost without exception, in favor of [Hartman] and against [CRC] on the multitude of pretrial motions in this case." Thus, the trial court adequately considered the *Mau* factors.

We also disagree with CRC's contention that the $159,888.08 fee award is unreasonable simply because it is disproportionate to a wage claim worth only about $16,000. In *Hartman v. Freedman, supra,* 197 Colo. at 281, 591 P.2d at 1321, the supreme court expressly rejected the contention that "the award of attorney's fees is limited by the amount of the judgment on the merits." *See also Mau, supra.*

## D.

CRC contends that the trial court erred in awarding attorney fees for duplicative work because this was a "one-attorney case" and Hartman had two attorneys present throughout the trial. We are not persuaded.

In support of this assertion, CRC cites *Ramos v. Lamm,* 713 F.2d 546, 554 n. 4 (10th Cir.1983), which stated, "No fees should be awarded for hours reported by lawyers or law clerks who are present at depositions, hearings, or trial for the purposes of being trained and who do not participate in or contribute to the proceedings."

■ We find *Ramos* inapposite, as that case involved more than twelve attorneys, at least five of whom "spent more than 200 hours each on the case and two spent more than 2000 hours each." *Ramos, supra,* 713 F.2d at 554; *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (disapproving *Ramos* on other grounds). Unlike *Ramos,* here only two attorneys were present during the trial, and one of them billed for only two hours of his time each day. Further, the record does not support CRC's assertion that the associate attorney did only "clerical work."

The *Ramos* court also acknowledged that "utilizing more than one lawyer may be rea-

sonable in some situations, such as during settlement conferences or during trial." `Ramos, supra,* 713 F.2d at 554. Here, the trial court found that "[t]his was a complicated case," and "it was completely appropriate to have a partner and an associate, especially given the number of hours that were written down by the law firm for [the associate's] hours."

Accordingly, we conclude that the trial court did not abuse its discretion as to the amount of fees awarded.

On remand, the trial court is directed to determine Hartman's reasonable attorney fees to be awarded for defending this appeal. *See Montemayor, supra; Porter, supra.*

The order is affirmed, and the case is remanded for an award of Hartman's appellate attorney fees.

Judge VOGT and Judge WEBB concur.