**Fred R. YAEKLE, Plaintiff–Appellant,**

v.

**William R. ANDREWS and Creative Door Systems, Inc., a Colorado corporation, Defendants–Appellees.**

No. 05CA1569.

Colorado Court of Appeals,
Div. III.

Feb. 23, 2007.

Rehearing Denied April 19, 2007.

Certiorari Granted Oct. 9, 2007.

Bell & Pollock, P.C., Bradley P. Pollock, Greenwood Village, Colorado, for Plaintiff–Appellant.

Boyle Partnership, P.C., Terence P. Boyle, Denver, Colorado; Mark Apelman, P.C., Mark Apelman, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROMÁN.

In this civil settlement dispute, plaintiff, Fred R. Yaekle, appeals a trial court order granting judicial enforcement of a settlement agreement and awarding attorney fees ·in favor of defendants, William R. Andrews and Creative Door Systems, Inc. We affirm in part, vacate in part, and remand for further proceedings.

Yaekle and Andrews were the sole owners and shareholders of their business, Creative Door Systems, Inc. After disputes arose between the owners, plaintiff sued defendants, and defendants filed counterclaims.

. Before trial, the parties engaged in a mediation, after which they executed a one-page "Basic Terms of Settlement" on September 29, 2004.

The basic settlement provided for:
- defendants to make certain monetary payments to plaintiff on a specified schedule;
- a confession of judgment to be entered in the event of defendants' default;
- a mutual release in full "of all claims that could or did arise between the parties known or unknown" prior to September 29, 2004;
- a joint stipulation to dismiss upon defendants' final payment;
- the parties to pay their own costs;

- defendants to give plaintiff specific computer equipment;
- default interest of eighteen percent to start without notice on any unpaid balance if a payment were five days late; and
- plaintiff to sign any necessary documents to confirm the transfer of his interest in Creative Door to Andrews.

Above the signature lines was the following statement: "The parties understand this document is a binding enforceable agreement."

This case would be resolved except that the basic settlement also required "Formal Documents to be prepared by [defense counsel] within 14 days." Per the agreement, defense counsel sent a draft of the formal settlement document and mutual release to plaintiff and his counsel. The parties then disputed whether the terms of the prepared formal settlement agreement accurately reflected the terms of their basic settlement agreement.

On December 21, 2004, defendants forwarded a revised settlement agreement and mutual release containing language demanded by plaintiff. In January 2005, plaintiff filed a notice of pending settlement, in which he represented to the court that "[t]he parties finally reached an agreement concerning the acceptable content and terminology to be set forth in the settlement documents." Plaintiff further acknowledged that "[d]efendant[s] submitted a final Settlement Agreement and Mutual Release in or about the week of December 20, 2004," but that due to the holidays plaintiff did not receive it until after the first of the year and that plaintiff's counsel had yet to receive it.

Plaintiff sought, and the trial court granted, a continuance to file the settlement agreement. Thereafter, plaintiff filed four more requests for continuances. The trial court granted two of plaintiff's requests but denied the other two.

In April 2005, defendants filed a motion for judicial enforcement of the December revised settlement agreement. Plaintiff responded with a countermotion for judicial enforcement of the September basic settlement agreement. The trial court granted defen-

dants' motion and determined that plaintiff and his counsel were jointly and severally liable for defendants' reasonable costs and attorney fees incurred after December 21, 2004.

## I. Enforcement of a Settlement Agreement

Plaintiff contends the trial court erred by enforcing the December settlement agreement and mutual release. We disagree.

Colorado's Dispute Resolution Act, § 13–22–301, et seq., C.R.S.2006, sets out the requirements for a settlement agreement to be judicially enforceable. Section 13–22–308(1), C.R.S.2006, provides:

> If the parties involved in a dispute reach a full or partial agreement, the agreement upon request of the parties shall be reduced to writing and approved by the parties and their attorneys, if any. If reduced to writing and signed by the parties, the agreement may be presented to the court by any party or their attorneys, if any, as a stipulation and, if approved by the court, shall be enforceable as an order of the court.

### A. September Settlement Agreement

It is uncontested that the basic settlement agreement executed on September 29, 2004 met § 13–22–308(1)'s requirements, and therefore is an enforceable settlement agreement.

### B. December Settlement Agreement

■ The issue of first impression before us is whether the revised settlement agreement drafted in December by defendants constitutes an enforceable settlement agreement, thereby replacing the September agreement, or whether the September basic agreement is the only agreement approved by the parties. We treat the issue as one of contract formation and agree with the trial court that the December agreement was enforceable.

■ Although the interpretation of a binding written contract is generally a question of law for the court, and thus subject to independent reevaluation by an appellate court, it is for the factfinder to determine

whether the parties have entered into a contract in the first instance. More precisely, when the existence of a contract is at issue, and the evidence is conflicting or admits of more than one inference, the factfinder decides whether a contract in fact exists. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo.1986); *Compton v. Lemon Ranches, Ltd.*, 972 P.2d 1078, 1080 (Colo.App.1999)(the existence of a contract or any modification or amendment thereto is a question of fact to be determined by consideration of all the circumstances).

Appellate courts are bound by factual findings when competent evidence exists in the record to support such findings. *I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra.* Unless the trial court's findings are clearly erroneous, they will not be reversed on appeal. *Compton v. Lemon Ranches, Ltd., supra.*

Here, the trial court enforced the December settlement agreement because it found that the parties approved its terms, stating:

- "Defendants sent the necessary documents to Plaintiff on October 1, 2004, and sent follow-up letters on October 11, 2004 and November 9, 2004";

- "Plaintiff's attorney only responded to the November 9, 2004 letter by objection to language in the mutual release provisions";

- "On November 22, 2004, Defendants provided authority for Plaintiff to modify the agreement to contain mirror-image provisions in the mutual release section"; and

- "On December 21, 2004, Defendants sent a revised settlement agreement with the mirror-image release language" demanded by plaintiff.

The record supports these findings except the trial court's finding that plaintiff's only objection to the November 9, 2004 letter related to the mutual release provision. The record shows that plaintiff also objected to the failure to include confession of judgment and default interest provisions. However, plaintiff's arguments regarding the confession of judgment and default interest provi-

sions were rendered moot when defendants timely made the final payment.

More important, plaintiff's attorney never challenged, in his exchange of correspondence with defendants either before or after the December agreement, the formal settlement provisions regarding (1) confidentiality; (2) the effective date of the transfer of interest in Creative Door; or (3) attorney fees. Likewise, plaintiff did not rely on the lack of agreement on these terms—or on any terms—as support for his four motions for continuance.

Rather, plaintiff's attorney requested the various continuances because (1) it was "necessary to investigate the facts surrounding" new information; (2) the "parties [may] have to renegotiate, in one form or other, certain portions of the Stipulation" because criminal charges had been brought against plaintiff; (3) the district attorney had not been assigned to the criminal case; and (4) defendants needed to make their final payment before filing a joint stipulation to dismiss.

In its June 13, 2005 order, the trial court found that plaintiff's language "was incorporated in the Mutual [R]elease verbatim." The court further found that "Plaintiff did not contest the language in the December Agreement until this Court denied any further extensions of time to file said Agreement and granted Defendants' Motion to Enforce the December Agreement." The record supports the trial court's findings.

■ Because the trial court as the factfinder must determine whether a contract exists, has been modified, or has been amended based on consideration of all the circumstances, and the record supports the trial court's findings, we conclude the December settlement agreement constitutes an enforceable agreement. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc., supra; Compton v. Lemon Ranches, Ltd., supra; see also Scoular Co. v. Denney,* 151 P.3d 615 (Colo.App.2006)(acceptance of a contract offer is defined as words or conduct that, when objectively viewed, manifests an intent to accept the offer; whether there has been acceptance is determined by an objective or reasonable person standard).

■ We further conclude the December settlement agreement meets § 13–22–308(1)'s requirements—a writing approved by the parties and their attorneys—to be judicially enforceable as a full settlement agreement. *See also Nat'l Union Fire Ins. Co. v. Price*, 78 P.3d 1138, 1141 (Colo.App. 2003)(§ 13–22–308(1) prevents an oral settlement agreement entered into during mediation from being enforceable by a court).

Here, the parties' agreement was reduced to formal documents as required by the September settlement agreement. As previously discussed, the parties and their attorneys approved the agreement through their conduct and representations to the trial court. *See Scoular Co. v. Denney, supra* (acceptance of a contract offer is conduct that, when objectively viewed, manifests an intent to accept the offer).

■ Our decision is also supported by the strong policy favoring dispute resolution rather than continued litigation. "When considering alternative consequences, we will defer to results that encourage the settlement of disputes." *Smith v. Zufelt*, 880 P.2d 1178, 1185 (Colo.1994); *see also Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 106 (Colo.1995)(important public policy exists in favor of resolution of disputes); *Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992) (public and judicial policies favor the settlement of disputes); *White v. Jungbauer*, 128 P.3d 263, 265 (Colo.App.2005)(similar).

We are mindful that the practical implication of this opinion may be that parties and mediators end up working harder and longer to make sure they have reached a full and final settlement agreement by the end of the mediation. Of course, the settlement memorandum could state that, if the parties do not reach agreement on additional documentation within a stated period of time, then any party shall be entitled to have the case resolved solely on the terms in the settlement memorandum.

In contrast to either of these approaches, however, is the practice of leaving for another day additional terms to be negotiated, which, ironically, invites the potential for further litigation rather than ending it. This dispute is a case in point.

Accordingly, the trial court did not err by enforcing the December settlement agreement and mutual release.

## II. Hearing

■ Plaintiff also contends the trial court erred by not conducting a hearing to resolve the dispute between the parties regarding the terms and conditions of the December settlement agreement. Because plaintiff did not ask for a hearing, we disagree.

■ If the terms or existence of a settlement are in dispute, an evidentiary hearing is required. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo.App. 2001); *see also Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir.1996); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.1987); *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 606 (5th Cir.1986). However, there is no automatic entitlement to an evidentiary hearing simply because a motion concerns a settlement agreement. *Stewart v. M.D.F., Inc., supra.*

Here, plaintiff never requested an evidentiary hearing regarding the allegedly disputed terms. On the contrary, he repeatedly represented to the court that the parties had reached a settlement agreement.

Under these circumstances, plaintiff is not entitled to an evidentiary hearing. *See Vaughn v. Sexton*, 975 F.2d 498, 505 (8th Cir.1992) (defendants not entitled to evidentiary hearing on motion to enforce settlement agreement, where original motion did not contain any request for evidentiary hearing).

This case reveals the risk of leaving a mediation with a basic settlement memorandum and a commitment to reduce to writing the remaining terms and conditions of settlement at a later date. After all, had the parties in this case not reached an agreement, and if plaintiff had then demanded a hearing, the trial court would have been required to hold an evidentiary hearing. *See DiFrancesco v. Particle Interconnect Corp., supra*, 39 P.3d at 1247.

Under these circumstances, however, the trial court was not required sua sponte to conduct a hearing regarding the terms and conditions of the settlement agreement.

## III. Attorney Fees and Costs

■ Plaintiff further contends the trial court erred by awarding attorney fees in favor of defendants because it failed to comply with the requirements contained in C.R.C.P. 121. Specifically, plaintiff argues that (1) the trial court failed to make the required findings of fact to support the award of fees; (2) the court's factual finding regarding delay based on the pending criminal case was erroneous; and (3) defendants failed to provide the necessary documentation. We agree in part, vacate the trial court's award of attorney fees and costs, and remand for further proceedings.

[C.R.C.P. 121 § 1–22] applies to requests for attorney fees made at the conclusion of the action, including attorney fee awards requested pursuant to Section 13–17–102, C.R.S. It also includes awards of fees made to the prevailing party pursuant to a contract or statute where the award is dependent upon the achievement of a successful result in the litigation in which fees are to be awarded and the fees are for services rendered in connection with that litigation.

C.R.C.P. 121 § 1–22(2)(a).

Pursuant to C.R.C.P. 121 § 1–22(2), any party seeking attorney fees shall file a motion for fees within fifteen days of entry of judgment or such greater time as the court may allow. The motion shall include any supporting documentation and shall explain the basis upon which the fees are sought, the amount of fees, and the method of calculation of fees. This rule provides for the filing of a response and reply, as well as discovery upon good cause shown. C.R.C.P. 121 § 1–22(2)(b). The court shall make findings of fact to support its determination of the motion. C.R.C.P. 121 § 1–22(2)(c).

■ The determination of what constitutes reasonable attorney fees "is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence."

*Am. Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 384 (Colo.1994) (quoting *Hartman v. Freedman,* 197 Colo. 275, 281, 591 P.2d 1318, 1322 (1979)). Thus, we review the reasonableness of the amount of attorney fees awarded under an abuse of discretion standard. *Hartman v. Cmty. Responsibility Ctr., Inc.,* 87 P.3d 254, 257 (Colo.App.2004). However, the trial court must make sufficient findings to permit meaningful appellate review of an attorney fees award. *Bilawsky v. Faseehudin,* 916 P.2d 586, 591 (Colo.App. 1995).

Here, defendants' attorney submitted an affidavit in support of their request for attorney fees. The trial court found plaintiff and his counsel were "jointly and severally liable for Defendants' reasonable costs and attorney fees incurred subsequent to December 21, 2004, in the amount of $3,465.38."

Defendants argue that attorney fees could have been awarded under either a fee-shifting provision in the December revised settlement agreement or § 13–17–101, et seq., C.R.S.2006. However, the trial court did not identify the basis for awarding fees, made no factual findings supporting its determination of the reasonableness of defendants' fees beyond the conclusory sentence ordering plaintiff and his attorney to pay, and did not explain the basis for joint and several liability. *See* § 13–17–102(3); C.R.C.P. 121 § 1–22(2)(c); *Bilawsky v. Faseehudin, supra.* Because we cannot determine the basis for the fee award, the basis for joint and severable liability, or whether the fees were reasonable, we cannot engage in a meaningful appellate review of the attorney fees awarded here. *See Bilawsky v. Faseehudin, supra.* For example, fees could not be awarded against plaintiff's counsel under the fee-shifting clause because counsel was not a party to the agreement.

Accordingly, we vacate the award of attorney fees and costs and remand to the trial court for factual findings regarding defendants' request for attorney fees and costs, including the basis for such award.

## IV. Appellate Attorney Fees and Costs

Defendants also request their appellate attorney fees and double costs, jointly and severally, against plaintiff and his counsel.

Even if the trial court determines that defendants are entitled to attorney fees and costs pursuant to § 13–17–101, et seq., we decline to award appellate attorney fees and costs because we conclude the appeal is not frivolous, groundless, or vexatious. *See* C.A.R. 38(d); *Mitchell v. Ryder,* 104 P.3d 316, 323 (Colo.App.2004).

Conversely, if the trial court determines that defendants are entitled to their attorney fees and costs pursuant to the fee-shifting provision in the December settlement agreement, the court shall also determine and award defendants' reasonable appellate attorney fees and costs. *See Wheeler v. T.L. Roofing, Inc.,* 74 P.3d 499, 506 (Colo.App. 2003).

In any event, we decline defendants' request for double costs under C.A.R. 38(d).

The order is vacated as to the award of attorney fees and costs, and the case is remanded for further proceedings consistent with this opinion. The order is affirmed in all other respects.

Judge TAUBMAN and Judge WEBB concur.