24CA0835 Wilkerson v Federal Credit 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0835
City and County of Denver District Court No. 23CV30518
Honorable Christopher J. Baumann, Judge

---

Curtis Wilkerson,

Plaintiff-Appellant,

v.

Federal Credit LLC and Joseph Cornell,

Defendants-Appellees.

---

JUDGMENT AND ORDER AFFIRMED
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LUM
Lipinsky and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Burk & Burk, Robert E. Burk, Centennial, Colorado, for Plaintiff-Appellant

Carver Law, LLC, John D. Carver, Breckenridge, Colorado, for Defendants-Appellees

¶ 1    Plaintiff, Curtis Wilkerson, appeals the district court's dismissal of his complaint against defendants, Federal Credit LLC and Joseph Cornell, along with the district court's entry of a judgment against him in the forcible entry and detainer (FED) proceeding that was consolidated with this case. We affirm.

## I.    Background

¶ 2    This appeal stems from Wilkerson's two leases of property that he owned until 2001 and in which he then continued to reside as a tenant. In 2001, he quitclaimed the property to his mother, who, in turn, sold it to Jr. E. Aragon. In 2004, Wilkerson and Aragon purportedly entered into a twenty-year lease (2004 lease) that gave Wilkerson an option to purchase the property for $50,000 at any point during the lease term. Under the lease, monthly rent was $500, and any amounts Wilkerson paid in excess of the rent would be applied toward the $50,000 purchase price.

¶ 3    Aragon lost the property through foreclosure. In 2009, Federal Credit, which Cornell owned and managed,[1] purchased the

---

[1] Our references to Federal Credit throughout this opinion encompass Cornell as well, except where we discuss Cornell's actions and statements in his individual capacity.

1

property at the foreclosure sale. After the purchase, Federal Credit informed Wilkerson that he needed to pay $1,000 in monthly rent or vacate the premises. Wilkerson argued that the 2004 lease was still in effect and said he was exercising his purchase option. After Federal Credit refused to honor the purchase option, Wilkerson complied with Federal Credit's rental terms and continued residing at the property.

¶ 4    In 2012, Federal Credit served Wilkerson with a notice to vacate. When Wilkerson refused to leave, Federal Credit filed an FED action. In his answer to the FED complaint, Wilkerson raised an affirmative defense under the Protecting Tenants at Foreclosure Act of 2009 (PTFA), 12 U.S.C. § 5220, and argued that the 2004 lease remained in effect. Instead of litigating the PTFA defense and the validity of the 2004 lease, however, the parties settled the case and filed a stipulation in county court outlining (1) the basic terms of a new lease; (2) the parties' agreement that Federal Credit could obtain a judgment for possession if the new lease wasn't signed within a week; and (3) the parties' understanding that "all previous issues and leases have been resolved."

¶ 5     Shortly after the court entered an order approving the stipulation, Wilkerson moved to set the stipulation aside, again citing the PTFA.  After additional proceedings, the court denied Wilkerson's motion, and the parties then executed a five-year lease (2012 lease), which became a month-to-month lease after the conclusion of the five-year term.

¶ 6     In 2014, Federal Credit initiated a second FED action after Wilkerson failed to comply with the terms of the 2012 lease.  In his answer to the complaint in that action, Wilkerson asserted that he was entitled to occupy the property under the 2012 lease and raised an affirmative defense under the PTFA.

¶ 7     After a hearing, the county court ruled against Wilkerson and issued a judgment for possession in favor of Federal Credit. Wilkerson unsuccessfully appealed that ruling.  Nonetheless, Federal Credit never enforced the judgment for possession and Wilkerson continued occupying the property under the terms of the 2012 lease.

¶ 8     In late 2022, Federal Credit again served Wilkerson with a notice to vacate and sought to terminate the 2012 lease.  Wilkerson didn't vacate the property and instead filed the action underlying

this appeal. In that action, he pleaded claims for declaratory relief, breach of contract, and unjust enrichment. Federal Credit filed a C.R.C.P. 12(b)(5) dismissal motion, which the district court granted.

¶ 9 Before the court dismissed Wilkerson's claims, Federal Credit filed a third FED action, which was consolidated into the action that Wilkerson initiated. After an FED hearing (2024 hearing), the district court granted Federal Credit's motion for judgment of possession, motion to inspect the property, and motion to release rents paid into the court registry during the pendency of the case.

¶ 10 Wilkerson appeals the district court's dismissal of his complaint and the judgment in favor of Federal Credit at the 2024 hearing.

## II. C.R.C.P. 12(b)(5) Dismissal

¶ 11 Wilkerson argues that the district court erred by dismissing his complaint. We disagree.

### A. Additional Procedural Background

¶ 12 In his complaint, Wilkerson sought a declaratory judgment that the 2004 lease was valid and enforceable, the 2012 lease was invalid, and Federal Credit was required to transfer the property to him under the 2004 lease. Wilkerson also brought claims for (1)

4

breach of contract, based on Federal Credit's refusal to honor the 2004 lease's purchase option; and (2) unjust enrichment in the amount of $120,000 — the total rent Wilkerson paid to Federal Credit above the $500 monthly rent specified in the 2004 lease, which, under the lease's terms, would be credited toward Wilkerson's purchase of the property.

¶ 13  The district court concluded that Wilkerson's declaratory judgment claim was barred (1) because Wilkerson failed to assert it as a compulsory counterclaim in the prior FED actions and (2) under the claim preclusion doctrine. The court further concluded that Wilkerson's breach of contract and unjust enrichment claims "necessary fail[ed]" because they were predicated on the validity of the 2004 lease and the court had denied Wilkerson's claim for a declaratory judgment that the 2004 lease was valid and enforceable.

B.    Standard of Review and Applicable Law

¶ 14  We review de novo a district court's dismissal of an action under C.R.C.P. 12(b)(5). *Sweeney v. United Artists Theater Circuit, Inc.*, 119 P.3d 538, 539 (Colo. App. 2005). "Accepting all allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, the trial court properly grants a C.R.C.P.

5

12(b)(5) motion only where the plaintiff's factual allegations cannot, as a matter of law, support a claim for relief." *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010).

¶ 15    C.R.C.P. 13(a) provides, "A pleading shall state as a counterclaim any claim which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." A counterclaim is compulsory if it is "logically related" to a claim brought by the opposing party. *Dinosaur Park Invs., L.L.C. v. Tello*, 192 P.3d 513, 517 (Colo. App. 2008) (quoting *Visual Factor, Inc. v. Sinclair*, 441 P.2d 643, 645 (Colo. 1968)); *see also McCabe v. United Bank of Boulder*, 657 P.2d 976, 978 (Colo. App. 1982) (Logical relationship is "a broad, flexible, and practical standard, which prevents the filing of a multiplicity of actions and encourages the resolution of all disputes arising out of a common factual matrix in a single lawsuit."). Both compulsory counterclaims and affirmative defenses are waived if they are not asserted in a responsive pleading. *Dinosaur Park Invs.,* 192 P.3d at 517. "The failure to plead a claim properly classified as a

compulsory counterclaim bars any later action on the claim." *In re Estate of Krotiuk*, 12 P.3d 302, 304 (Colo. App. 2000).

¶ 16    Exceptions to the compulsory counterclaim rule apply "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires." C.R.C.P. 13(f). Under such circumstances, the pleader may seek "leave of court [to] set up the counterclaim by amendment." *Id.* The supreme court has concluded that excusable neglect exists "when the surrounding circumstances would cause a reasonably careful person similarly to neglect a duty." *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 319 (Colo. 2010) (quoting *In re Weisbard*, 25 P.3d 24, 26 (Colo. 2001)) (describing excusable neglect in the context of moving to set aside a default judgment pursuant to C.R.C.P. 60(b)).

## C.    Analysis

¶ 17    Wilkerson doesn't contest the district court's conclusion that his claims regarding the validity of the 2004 lease and the invalidity of the 2012 lease were compulsory counterclaims in the 2014 FED action. Instead, he argues that his failure to raise those issues

should be excused under C.R.C.P. 13(f)'s "excusable neglect" and "when justice requires" exceptions.

¶ 18    Wilkerson argues that his failure to assert the validity of the 2004 lease in the 2014 FED action constituted excusable neglect because he was under duress from the threat of eviction. Specifically, he contends that (1) he was an "unsophisticated" litigant who was self-represented at times; (2) he only agreed to the 2012 lease and stipulation to "appease [Federal Credit] so he and his family would not get evicted"; (3) he was left with no choice but to comply with the 2012 lease's terms; and (4) the "economic duress" continued into 2014, preventing him from raising compulsory counterclaims. For the same reasons, he argues that justice now requires that he be permitted to pursue his claims. While we acknowledge the stress that an eviction proceeding undoubtedly causes a tenant, we reject Wilkerson's contentions.

¶ 19    We disagree that C.R.C.P. 13(f) is applicable. The 2014 FED action was completed more than ten years ago, and the Rule's language — that a party "may by leave of court set up the counterclaim" — contemplates amending pleadings to include an omitted counterclaim before a final decision in the case is reached.

Wilkerson doesn't cite, and we haven't found, any case applying C.R.C.P. 13(f) to excuse a party's failure to bring compulsory counterclaims years after the litigation ended. *See Allen v. Martin*, 203 P.3d 546, 555 (Colo. App. 2008) ("The purpose of C.R.C.P. 13(a) is to prevent a multiplicity of lawsuits arising from one set of circumstances.").

¶ 20    Even if C.R.C.P. 13(f) applied, however, Wilkerson doesn't cite any Colorado case holding that economic pressure and the possibility of eviction (1) constitute "excusable neglect" or (2) create a circumstance in which "justice requires" the court to excuse a failure to raise compulsory counterclaims. And even if that were the case, Wilkerson's actions throughout the 2012 and 2014 FED cases were inconsistent with his argument that he was under such pressure from Federal Credit that he simply acquiesced to its demands to avoid eviction. To the contrary, Wilkerson (1) raised affirmative defenses in the 2012 FED action; (2) moved to set aside the 2012 stipulation and appealed the denial of his motion; (3) defended against the 2014 FED action (but, notably, didn't argue that the 2004 lease remained in effect or that the 2012 lease was

invalid); and (4) attempted to appeal the 2014 FED ruling granting Federal Credit a judgment for possession.

¶ 21    To the extent Wilkerson argues that he didn't intentionally waive his claims relating to the 2004 lease, his argument is unavailing. Our case law is clear that the failure to assert a compulsory counterclaim results in a waiver, and no language suggests that the failure must be the result of an intentional act. *See, e.g.*, *Estate of Krotiuk*, 12 P.3d at 304; *Dinosaur Park Invs.*, 192 P.3d at 517.

¶ 22    For these reasons, we conclude that the district court didn't err by dismissing Wilkerson's declaratory judgment claim. Because of our disposition, we need not address Wilkerson's arguments regarding the claim preclusion doctrine's applicability to his declaratory judgment claim.

¶ 23    Lastly, we note that Wilkerson argues that the district court erred by concluding that his breach of contract and unjust enrichment claims are barred by the doctrine of claim preclusion. However, the court didn't dismiss those claims on that basis. It dismissed them because it concluded that they were premised on the validity of the 2004 lease. Because Wilkerson doesn't challenge

that conclusion, we reject any contention (to the extent he makes it) that the district court erred by dismissing those claims.

### III. Underlying FED Action

¶ 24    Wilkerson next argues that the district court reversibly erred by ruling in Federal Credit's favor at the 2024 FED hearing. We disagree.

### A. Standard of Review and Applicable Law

¶ 25    "A judgment following a bench trial presents a mixed question of fact and law. We review the trial court's factual findings under a clear error standard, but review its legal conclusions de novo." *Kroesen v. Shenandoah Homeowners Ass'n*, 2020 COA 31, ¶ 55 (citation omitted).

¶ 26    A factual finding is clearly erroneous if it has no support in the record. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008). "When the evidence is conflicting, a reviewing court may not substitute its conclusions for those of the trial court merely because there may be credible evidence supporting a different result." *Id.*

¶ 27    To the extent Wilkerson argues that the 2012 lease is invalid, the existence of a contract is a question of fact. *Yaekle v. Andrews*, 169 P.3d 196, 198-99 (Colo. App. 2007) ("[W]hen the existence of a

11

contract is at issue, and the evidence is conflicting or admits of more than one inference, the factfinder decides whether a contract in fact exists."), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008).

## B. Analysis

¶ 28 After the 2024 hearing, the district court granted Federal Credit possession of the property based on the 2012 lease, and it granted Federal Credit's motions for property inspection and to release rents Wilkerson had deposited into the court registry pending a ruling on the FED action and Federal Credit's motion to dismiss Wilkerson's complaint. The court also denied Wilkerson's oral motion for a stay to file an appeal of its decision. Wilkerson appeals these rulings.

¶ 29 Wilkerson seeks reversal of the judgment for possession because, he argues, the district court erred by finding that the 2012 lease was valid and enforceable. He argues that the court's decision lacked record support and "gave no credence to [his] testimony." We disagree.

¶ 30 The district court's findings regarding the existence and validity of the 2012 lease were supported by the record, including (1) the lease itself, signed by Wilkerson and Cornell, as agent for

Federal Credit; (2) Cornell's testimony about the lease; (3) Wilkerson's answer in the 2014 proceeding acknowledging the 2012 lease's terms; and (4) Wilkerson's actions in conformity with the 2012 lease. While Wilkerson points to conflicting evidence and argues that Cornell's testimony wasn't credible, the resolution of evidentiary conflicts and credibility determinations are the trial court's sole province. *Lawry*, 192 P.3d at 558; *Yaekle*, 169 P.3d at 198-99. Accordingly, we won't reverse the district court's findings.

¶ 31 Wilkerson's arguments regarding the district court's rulings on the motion for property inspection, motion for release of registry funds, and motion for stay are all premised on his argument that the district court erred by finding that the 2012 lease was valid and enforceable. Because we conclude that the district court didn't err in that regard, we necessarily reject these contentions.

## IV. Attorney Fees

¶ 32 Federal Credit seeks an award of appellate attorney fees pursuant to a provision of the 2012 lease that states, "[Federal Credit] and [Wilkerson] agree that the Court shall award the prevailing party in any eviction, unlawful detainer, or action brought under [section] 13-40-101[, C.R.S. 2024,] . . . their

reasonable attorneys' fees and costs." The lease further states that Wilkerson shall pay Federal Credit's attorney fees if Federal Credit prevails in "any action . . . connected with [the 2012 lease], regardless of whether such claim is based on contract, tort, or other legal theory."

¶ 33 Because this action is plainly "connected with" the 2012 lease, we agree that Federal Credit is entitled to an award of its reasonable attorney fees under this fee-shifting provision. *See, e.g.*, *In re Estate of Gattis*, 2013 COA 145, ¶ 45 (awarding appellate attorney fees pursuant to fee-shifting provision in underlying agreement). However, because the district court is in a better position than we are to determine the amount of such fees, we exercise our discretion under C.A.R. 39.5 and remand for the district court to determine and award Federal Credit a reasonable amount of appellate attorney fees.

¶ 34 We deny Federal Credit's request for attorney fees under section 13-17-102(4), C.R.S. 2024. Though Wilkerson did not prevail, we do not conclude that his claims were so baseless as to lack substantial justification. *In re Estate of Shimizu*, 2016 COA 163, ¶ 34 (stating that awards of appellate attorney fees under

14

section 13-17-102 are "appropriate only in clear and unequivocal cases where no rational argument is presented and, thus, the appeal is frivolous").

## V.  Disposition

¶ 35     The judgment and order are affirmed, and the case is remanded to the district court for determination of the amount of appellate attorney fees awardable to Federal Credit.

JUDGE LIPINSKY and JUDGE PAWAR concur.