23CA1373 Brinkerhoff v Thurber 08-07-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1373
Douglas County District Court No. 16CV30253
Honorable Andrew C. Baum, Judge

William Brinkerhoff and Renee Brinkerhoff,

Plaintiffs-Appellees,

v.

Mark Thurber and Robyne Thurber,

Defendants-Appellants,

and

Jeffrey C. Keiffer,

Attorney-Appellant,

v.

Jefferson Park Development, LLC,

Third-Party Defendant-Appellee.

ORDERS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division B
Opinion by JUDGE GOMEZ
Fox and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

The Overton Law Firm, Thomas J. Overton, Steven R. Schumacher, Golden, Colorado, for Plaintiffs-Appellees

Spencer Fane LLP, Troy R. Rackham, Denver, Colorado, for Defendants-Appellants and Attorney-Appellant

Dill Dill Carr Stonbraker & Hutchings, PC, Patrick D. Tooley, Denver, Colorado, for Third-Party Defendant-Appellee

¶ 1 Defendants, Mark and Robyne Thurber, and their attorney, Jeffrey C. Keiffer, appeal the trial court's orders directing them to pay more than $850,000 in sanctions to plaintiffs, William and Renee Brinkerhoff, and third-party defendant, Jefferson Park Development, LLC (JPD). The Thurbers and Mr. Keiffer contend that the trial court erred by imposing such sanctions without (1) identifying the legal basis for sanctions, (2) making sufficient factual findings, or (3) conducting a hearing. We agree with the first two contentions and decline to address the third. Accordingly, we reverse the sanctions orders and remand the case with directions.

## I. Background

¶ 2 The Brinkerhoffs and the Thurbers own adjacent parcels of property in a rural part of Douglas County. Since the Brinkerhoffs purchased their parcel in 1994, they have used an easement that passes over the Thurbers' land, known as the Main Drive Easement, as a driveway to access their property from the public road. The Brinkerhoffs and the Thurbers have long disputed issues relating to the use and maintenance of the Main Drive and have been engaged in litigation over those issues (as well as issues relating to other claimed easements) since 2011.

¶ 3    In 2014, the parties reached a settlement agreement in the hopes of putting their disputes to rest.  Under that agreement, the Brinkerhoffs would abandon the Main Drive Easement in favor of a new easement, called the Northern Drive Easement, which would pass through a different part of the Thurbers' property, as well as through part of a neighboring parcel owned by Craig and Mary Ewing.[1]  (The existing Main Drive also went through a part of the Ewings' parcel.)

¶ 4    Because the Northern Drive Easement was to pass over their land, the Ewings' cooperation was a necessary condition to effectuate the settlement agreement.  Although it wasn't required by the settlement agreement, Mr. Ewing insisted that the documents creating the Northern Drive Easement and those abandoning the Main Drive Easement be executed simultaneously.  The Ewings formalized a document to create the Northern Drive Easement, and the parties prepared documents for the abandonment of the Main Drive Easement.  But the Ewings' easement document was never

---

[1] The Ewings' property was in fact owned by the couple's retirement accounts.  But for simplicity's sake, we refer to them as the owners.

delivered, the abandonment documents were never executed, and the Northern Drive was never constructed.

¶ 5     By October 2015, the Ewings were divorced and had agreed to partition their property into three separate parcels. They divided up the parcels on the northern and southern ends and planned to sell the middle parcel, where the Northern Drive was proposed to be.

¶ 6     In 2016, the Brinkerhoffs filed the underlying case seeking a declaratory judgment that the settlement agreement was no longer viable or enforceable. The Thurbers responded with various counterclaims.

¶ 7     While this case was pending, JPD, a limited liability company wholly owned by the Brinkerhoffs, purchased the Ewings' middle parcel.

¶ 8     In 2017, the trial court held a bench trial on the initial issue of the viability of the settlement agreement. The court entered an order in 2018 finding that the settlement agreement was salvageable and that the condition requiring the Ewings' cooperation was moot due to JPD's purchase of the middle parcel.

¶ 9     The Thurbers later filed third-party claims against JPD. The Thurbers sought a declaration that they were entitled to enforce the

3

settlement agreement and that both the Brinkerhoff parcel and the middle parcel JPD had purchased from the Ewings were burdened by the Northern Drive Easement.

¶ 10    In mid-2020, JPD served Ms. Ewing with a subpoena to produce documents.  Among the responsive documents Ms. Ewing produced were some emails she received from Ms. Thurber and Mr. Keiffer in February 2016, before JPD purchased the middle Ewing parcel.  In one email, Ms. Thurber informed Ms. Ewing that Mr. Ewing had said he considered the deal establishing the Northern Drive Easement to be "dead."  In another, Mr. Keiffer emailed the Ewings, copying Ms. Thurber, in an effort to confirm that Mr. Ewing had declared that "the Northern [Drive] [E]asement deal [wa]s dead" and to convince the Ewings to reconsider.

¶ 11    Despite their apparent relevance to the issue of whether the middle Ewing parcel was burdened by the Northern Drive Easement when JPD purchased it and thus whether the settlement agreement remained enforceable, the Thurbers didn't produce these emails in discovery before the 2017 trial.  In fact, the Thurbers had produced the underlying emails but had redacted those particular parts.  And instead of redacting those parts in a way that would've made the

4

redactions obvious, they made the redactions in white. A digital forensics service determined that the emails had been deleted from Ms. Thurber's computer.

¶ 12     The trial court went on to conduct a second trial in 2022 on the parties' various claims. Before and at trial, the Brinkerhoffs and JPD sought evidentiary sanctions against the Thurbers for their failure to disclose the emails and for other alleged discovery violations. The court declined to order such sanctions. However, it suggested that monetary sanctions would likely be appropriate, without explaining the precise legal basis for such sanctions, and instructed the Brinkerhoffs and JPD to file lists after the trial of the specific amounts of time they believed they had wasted due to the nondisclosure of the emails.

¶ 13     In its post-trial order, the court found that the Thurbers, "perhaps with either the assistance or negligence of their attorney," Mr. Keiffer, "intentionally kept" the emails "from the Brinkerhoffs and the [c]ourt in connection with the 2017 trial." The court similarly found that the Thurbers, potentially with Mr. Keiffer's assistance, had also intentionally withheld logs Ms. Thurber had kept for years detailing activities relating to the Main Drive. (Those

logs were also first disclosed shortly before the second trial.) The court determined that it was "impossible to know . . . what the [c]ourt might have done differently in 2017 had there been complete disclosure," but regardless, "[t]hese non-disclosures caused a tremendous waste of [c]ourt resources and interfered with the natural progression of the history related to" the properties and the litigation. Ultimately, the court found, in contrast to its finding after the 2017 trial, that while "determining the exact date [was] non-productive[,] [t]he totality of the circumstances" established that the settlement agreement had failed before JPD purchased the middle Ewing parcel.

¶ 14     After trial, the Brinkerhoffs and JPD moved for an award of their attorney fees and costs from the entire case as a sanction against the Thurbers and Mr. Keiffer for their nondisclosure of the emails and logs. Neither the Brinkerhoffs nor JPD requested a specific amount of fees or costs at that time; instead, they indicated that they would submit statements of their fees and costs after the court granted their motions for sanctions.

¶ 15     Although the Brinkerhoffs didn't set forth a legal basis for ordering sanctions, JPD cited three potential bases:

1. The court's inherent authority to impose sanctions for conduct that is inconsistent with the orderly administration of justice or undermines the integrity of the judicial process, *see generally Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 204 (Colo. App. 1998); *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017);

2. Section 13-17-102(4), C.R.S. 2024, which permits a court to impose sanctions where an attorney or party asserts a claim or defense that is substantially groundless, frivolous, or vexatious or unnecessarily expands a proceeding through abuses of discovery procedures or other improper conduct; and

3. C.R.C.P. 26(g)(3) and 37(c)(1), which permit a court to impose sanctions on an attorney or party for wrongly certifying the completeness and accuracy of disclosures or for failing to disclose evidence.

¶ 16 The Brinkerhoffs requested an evidentiary hearing on their motion as to any issues contested by the Thurbers and Mr. Keiffer.

JPD expressed that it didn't believe a hearing was needed but requested one if necessary.

¶ 17    The Thurbers responded to both motions, arguing that sanctions were unjustified but not mentioning a potential hearing.

¶ 18    Thereafter, the trial court — at that point, a different judge, following the original judge's retirement — entered two very brief orders granting the two motions for sanctions. The court didn't identify the legal basis for its decision and didn't make any factual findings. Instead, it simply directed the Thurbers and Mr. Keiffer, jointly and severally, to reimburse the Brinkerhoffs and JPD for their attorney fees and costs incurred in the action. It also ordered the Brinkerhoffs and JPD to submit statements of recoverable attorney fees and costs, along the lines the court had alluded to during the second trial.

¶ 19    The Brinkerhoffs and JPD submitted their attorney fee and cost statements. The Thurbers responded by filing an objection, a motion for a briefing schedule and for additional time to respond to the statements (including to analyze the potential conflict of interest between the Thurbers and Mr. Keiffer), and a request for a hearing

pursuant to C.R.C.P. 121, section 1-22. Mr. Keiffer, too, through his law firm, filed a request for a hearing.

¶ 20 The trial court entered two more very brief orders a few days later, one as to the Brinkerhoffs and the other as to JPD. The court again didn't identify the legal basis for imposing monetary sanctions or make any factual findings (other than that the amounts charged were reasonable, necessary, and proper to litigate the issues in the case), instead merely stating that it had reviewed both submissions and awarded the full amounts requested — $399,130.53 to the Brinkerhoffs and $458,813.97 to JPD.

¶ 21 The court also entered another order denying the request for a hearing on the basis that the Thurbers and Mr. Keiffer hadn't cited any authority showing that such a hearing was required and hadn't identified the issues they believed should be addressed at a hearing.

¶ 22 The Thurbers and Mr. Keiffer now appeal.

## II. Discussion

¶ 23 The Thurbers and Mr. Keiffer acknowledge that the trial court would be within its discretion to award sanctions based on their nondislosure of emails and logs. Nonetheless, they challenge the trial court's award of attorney fees and costs as sanctions on the

9

basis that the court failed to (1) identify the legal basis for such sanctions, (2) make sufficient factual findings to support its decision, and (3) conduct a hearing. We agree with the first two contentions and don't reach the third.

¶ 24     We review the reasonableness of an attorney fee award for an abuse of discretion. *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16. A court abuses its discretion if its award is manifestly arbitrary, unreasonable, or unfair, *Nesbitt v. Scott*, 2019 COA 154, ¶ 16, or is based on a misapplication of the law, *Payan*, ¶ 16.

¶ 25     However, we review de novo the legal analysis the trial court relied on in reaching its decision to award fees. *In re Marriage of Tognoni*, 313 P.3d 655, 661 (Colo. App. 2011); *Bd. of Cnty. Comm'rs v. Kraft Bldg. Contractors*, 122 P.3d 1019, 1022 (Colo. App. 2005). To that end, the trial court must make sufficient findings to disclose the basis for its decision to award fees and enable a reviewing court to assess the propriety of that decision. *Brody v. Hellman*, 167 P.3d 192, 206 (Colo. App. 2007); *see also Yaekle v. Andrews*, 169 P.3d 196, 201 (Colo. App. 2007) (reversing an attorney fee award where "the trial court did not identify the basis for awarding fees, made no factual findings supporting its determination of the reasonableness

of defendants' fees beyond the conclusory sentence ordering plaintiff and his attorney to pay, and did not explain the basis for joint and several liability"), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008).

¶ 26　　As we've noted, JPD's motion for sanctions identified three potential legal grounds on which the trial court could base an award of monetary sanctions: (1) the court's inherent authority; (2) section 13-17-102; and (3) C.R.C.P. 26 and 37.  It's possible that the trial court granted the motions for sanctions on one or more of these grounds.  But because it didn't identify its reasoning, we can't be sure which basis, if any, the court relied on.

¶ 27　　No matter which basis the court relied on, however, the court erred by ordering the payment of sanctions without explaining its reasoning or making factual findings.  In the absence of any explanation as to the legal basis for its orders, we cannot assess the propriety of the court's decision or measure it against the applicable standards for awards under a court's inherent sanctioning authority, section 13-17-102, and C.R.C.P. 26 and 37.  *See Brody*, 167 P.3d at 206; *Yaekle*, 169 P.3d at 201.

11

¶ 28    And regardless of which legal basis (or bases) the court may have intended to rely on, it needed to make some factual findings to justify the sanctions ordered. *See Goodyear Tire & Rubber Co.*, 581 U.S. at 110 (in awarding attorney fees under a court's inherent sanctioning authority, the court must determine what specific fees a party wouldn't have incurred but for another party's misconduct); *Pedlow v. Stamp*, 776 P.2d 382, 385-86 (Colo. 1989) (in awarding attorney fees under section 13-17-102, a court must make factual findings to support its conclusion that such fees are warranted and explain the reason for the award; "[w]ithout such factual findings, appellate review is not possible"); *Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672, 678 (Colo. 1987) (in awarding attorney fees under C.R.C.P. 37, a court must "set out the factual and legal bases for the imposition of a sanction" and "explicate on the record why it chose the particular sanction imposed").[2]

---

[2] We reject the Brinkerhoffs' and JPD's arguments that this issue wasn't preserved. The Thurbers and Mr. Keiffer opposed the motions for sanctions, arguing that no sanctions were warranted. And the trial court had an obligation to explain the basis for its decision, regardless of whether or not the Thurbers and Mr. Keiffer reminded the court of that obligation.

¶ 29    Accordingly, we conclude that the trial court erred by entering orders requiring the Thurbers and Mr. Keiffer to pay over $850,000 in sanctions without identifying or explaining its rationale for doing so.  We therefore reverse the orders and remand the case to the trial court to redetermine the sanctions issues, applying the relevant standards and explaining the basis for its decision.

¶ 30    Because we reverse the sanctions orders on these grounds, we don't consider the Thurbers' and Mr. Keiffer's contention that the trial court further erred by failing to conduct a hearing before imposing sanctions.  But if the Thurbers or Mr. Keiffer make a timely request for such a hearing on remand, the court shall conduct one.  *See Marriage of Tognoni*, 313 P.3d at 661 (if a party opposing a motion for sanctions under section 13-17-102 requests a hearing, the court must conduct one); *People ex rel. Pub. Utils. Comm'n v. Entrup*, 143 P.3d 1120, 1123 (Colo. App. 2006) (if a party opposing a motion for sanctions under C.R.C.P. 37 requests a hearing, the court must conduct one); *see also In re Marriage of Turilli*, 2021 COA 151, ¶ 30 ("Where . . . a party requests a hearing on the reasonableness of attorney fees, due process requires that the district court hold such a hearing."); C.R.C.P. 121, § 1-22(2)(c)

("When required to do so by law, the court shall grant a party's timely request for a hearing" on a motion for attorney fees.).

## III.   Appellate Attorney Fees

¶ 31    The Brinkerhoffs and JPD request an award of their appellate attorney fees and costs as prevailing parties pursuant to C.A.R. 39 and 39.1.  Given our disposition of this appeal, we decline to award any such fees or costs.

## IV.   Disposition

¶ 32    The orders are reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

JUDGE FOX and JUDGE LUM concur.